## McDowell v. Commonwealth.

(Decided March 6, 1925.)

### Appeal from McCracken Circuit Court.

1.  Abduction—Criminal Law—Instruction that Inability to do Act, Charged to have been Intended, Would Warrant Acquittal Held Properly Refused.—In prosecution under Ky. Stats., section 1158,

for detaining a woman with intention to commit act forbidden. where evidence was that accused was suffering from venereal disease so as to make act difficult if not impossible, instruction that inability to do act warranted acquittal held properly refused; inability to commit act being no answer to charge of intending so to do, but merely evidence tending to establish innocence, charge on which would be singling out and emphasizing portions thereof.

2. Criminal Law—Consideration by Jury of Rejected Testimony Not Grounds for New Trial.—Consideration by jury of rejected testimony, attempted to be shown on affidavit of juror, held not grounds for new trial, since, under Criminal Code of Practice, section 272, juror cannot be examined to establish such ground for new trial.

3. Abduction—Conviction for Detaining a Woman with Intent to do Act Forbidden by Statute Sustained.—Evidence held to sustain conviction for detaining a woman with intent to do act forbidden by Ky. Stats., section 1158.

NICHOLS & NICHOLS for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, William McDowell, upon his trial under an indictment charging him with the offense of detaining a woman as denounced by section 1158 of our present statutes and with the intention on his part to himself commit the act therein forbidden, was convicted in the McCracken circuit court.

The prosecutrix was Mrs. Laura Miles, a white woman as we gather from the evidence, while the defendant is a colored man. Mrs. Miles was then and had been for a considerable time a waitress at the Palmer House, the leading hotel in the city of Paducah, Kentucky; while defendant up to within a short time theretofore had been employed at the same hotel as operator of the elevator. The prosecutrix, with her husband, roomed in the residence of a Mrs. Williams, who was head waitress at the Palmer House and who lived on North Fifth street in the city, the room occupied by Mrs. Miles and her husband being the upstairs front room. It opened into a hall reached by a stairway coming up from the front and immediately adjoining it was another room occupied by others, which likewise opened into the hall and between that room and the front one there was a door which was unlocked. The prosecutrix was slightly ill on the day of the occurrence testified to by her and had been for several days prior thereto, which detained her from her work.

Her husband usually left home for his work at something about 5:45 in the morning and which he had done on the occasion involved. Likewise the roomers in the adjoining room had departed for their work and had left the door leading into the hall from their room slightly open. At about six o'clock that morning or shortly thereafter, and after Mr. Miles had departed and his wife was still in bed, she testified that defendant, whom she knew, came into her room from the adjoining one and pulled the covering from over her and jumped into bed, seizing her person. She immediately screamed and thereby aroused some boarders on the first floor, among whom was a Mr. Ford. The defendant in the meantime had left her room by the way he entered it and she immediately heard some scuffling down in the hall on the first floor. She went down the steps and observed the defendant at about the front gate running from the premises and Ford after him. Within an hour or so defendant was arrested at his boarding house some five or six squares away and was carried to the city hall, where he was identified by Mrs. Miles as the intruder into her room.

Ford was absent from the state at the time of the trial and consequently did not testify in the case. However, Mrs. Miles and a policeman testified that he also identified the defendant, but upon motion that evidence was properly excluded. Mr. Miles testified that on the morning before, as he was leaving his boarding house at the usual hour, he saw defendant emerge from an alley by the side of the premises, which was a *cul de sac* and led to nothing but a garage or stable; that defendant upon discovering him turned towards the business section of the city, followed by Mr. Miles, who thought nothing of the incident at that time.

Defendant acknowledged that he knew Mrs. Miles, whom he had seen at the hotel where they both worked, but denied that he was the one who entered her room and stated that at that time he was at his boarding house which, as we have stated, was some five or six blocks away. He also testified that he was then suffering from a venereal disease because of which he had quit his work at the Palmer House and that as a consequence of it he was swollen and lame and had to walk with a stick. He was more or less corroborated by a number of witnesses who boarded in or occupied the same house that he did. One witness testified that he walked with-

out a stick on that morning when he was arrested. He proved by the county physician that, after he was incarcerated in jail and some two or three weeks after his arrest, the witness visited him in jail and found him afflicted with the disease with which he claimed he was suffering, and according to the opinion of the witness that disease had existed for about two or perhaps three weeks. The witness also testified that defendant would have some difficulty in committing the act which the indictment charged him with intending to do, but that it was possible for him to do so. The jury, under the instructions of the court, and with the testimony as outlined, convicted him and, his motion for a new trial having been overruled, he prosecutes this appeal.

The principal ground relied on for a reversal is that it was the duty of the court, under the rule requiring the whole law of the case to be given to the jury, to instruct the latter that if they believed from the evidence defendant was physically unable to do or perform the act denounced by the statute he should be acquitted. Clearly, that position is untenable for two reasons: (a), even if it had been established beyond all peradventure of doubt that defendant was physically unable because of his affliction to accomplish the purpose with which he was charged, yet he could commit the offense denounced by the statute, since it is not required that such purpose should actually be performed, but only that the detaining should be made with the intention of accomplishing it. Since, therefore, the intention to accomplish the purpose, or to make an effort to do so, might be entertained by one who at the moment was physically unable to do so, still he could commit the statutory offense by detaining the female with such intention though impossible or difficult of performance. Again (b), to have given the instruction as contended for would have clearly violated the rule against emphasizing in the instructions portions of the evidence (Jones v. Commonwealth, 186 Ky. 283), and also in singling out particular facts relied on by defendant to establish his innocence.

In the case of Wallace v. Commonwealth, 187 Ky. 775, the defendant relied on an *alibi* testified to by him and in which he was corroborated by other witnesses. One of the errors assigned for a reversal of the judgment of conviction was that the court, under the rule requiring the whole law to be given, should have specifically in-

structed the jury that if they believed that the *alibi* relied on was established they should find defendant not guilty. In rejecting that contention, the opinion said:

"This evidence offered by appellant, as to his being elsewhere when the crime was committed, was competent upon the issue as to his guilt, and the instruction of the court, that before finding him to be guilty, the jury must believe beyond a reasonable doubt, that he broke and entered the store with the intent to steal, and to find him not guilty, if entertaining a reasonable doubt as to his guilt, were all the instructions necessary to protect his rights upon the issue as to his guilt. The only issue in the case was whether the appellant participated in the commission of the crime."

In this case the defendant sought to establish his innocence because of his affliction rendering him unable to carry out his intention. That fact was no more efficacious to establish his innocence than was the *alibi* relied on in the case referred to. The facts relied on in both classes of cases were intended to disprove the commission of the offense charged in the indictment, and we can discern no greater reason for adopting the contention by learned counsel for appellant in this case than was presented to us in the Wallace case *supra* involving an *alibi*.

It is also stated in the motion and grounds for a new trial that the jury, while considering the case, discussed the rejected testimony as to the identification of the defendant by Ford, and that fact is sought to be established by the affidavit of a juror who sat in the case. But we are forbidden under the express provisions of section 272 of the Criminal Code to consider this ground, since by its provisions "a juror cannot be examined to establish a ground for a new trial, except it be to establish that the verdict was made by lot." Numerous cases are cited in notes 1 and 2 to that section. A late one, decided since the publication of the present edition of the code, is that of Clarke v. Commonwealth, 201 Ky. 620.

Were we to look alone to the number of witnesses who testified on either side of the controversy and attach equal credibility to each of them, we would be compelled to hold that the evidence for defendant at least preponderated in favor of his innocence, but neither we nor

the jury that tried the case are governed by any such rule of practice.

That some one entered the room of Mrs. Miles is convincingly proven, not only by her testimony but by that of other witnesses who arrived soon thereafter and saw her nervous and excited condition. She pointed out the defendant as the guilty party from among a number of other colored persons, and there is nothing appearing in the record to establish a motive on her part to wrongfully and falsely accuse him. The testimony of defendant and his *alibi* witnesses is also contradicted by the husband of the prosecutrix when he stated that he saw defendant coming out of the alley on the morning before, and when he was walking erect and without either crutch or stick. We, therefore, conclude that this is not a case where the evidence as a whole is of such a nature as to authorize us to reverse the judgment of conviction upon the ground that it is flagrantly against the evidence.

Perceiving no error entitling defendant to a reversal of the judgment, it is affirmed.