## Clark v. Commonwealth.

(Decided January 18, 1924.)

### Appeal from Harlan Circuit Court.

1. Homicide—Evidence Held to Sustain Manslaughter Conviction.—Evidence held to sustain a conviction of voluntary manslaughter.

2. Criminal Law—Necessity of Limiting Impeaching Testimony.—Court did not err in refusing to admonish the jury as to the effect of testimony introduced in rebuttal by the Commonwealth as to the moral character of two of defendant's witnesses.

3. Witnesses—Testimony as to Reputation of Witness for Morality Not too Remote.—Impeaching testimony as to the reputation of witnesses for morality was not incompetent, on the ground that it related to the moral character of the witnesses six months before testifying.

4. Criminal Law—Verdict Held Not Arrived at by Lot, and Not to Require New Trial—"Decided by Lot."—Where all jurors agreed defendant was guilty of voluntary manslaughter, and then agreed that each write on a slip of paper the punishment which he was in favor of inflicting, and to add all of these amounts together and divide the sum by twelve, and see what it would amount to, and the quotient of the various sums put down amounted to 4⅓ years, and all of the jurors then agreed to fix the punishment at four years, and the verdict was so written, the verdict was not "de-

cided by lot," within Criminal Code of Practice, section 271, subsection 3, and did not furnish grounds for a new trial, on the theory that the verdict was not a "fair expression by the jurors."

5. Criminal Law—Juror Cannot be Examined to Establish Ground for New Trial.—Under Criminal Code of Practice, section 272, a juror cannot be examined to establish a ground for a new trial, execpt it be to establish that the verdict was made by lot, and hence cannot be examined to establish that for any other reason the verdict was not the "fair expression of the jurors."

J. B. SNYDER and HALL, JONES & LEE for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, John Clark, was convicted in the Harlan circuit court of the crime of voluntary manslaughter at his trial under an indictment charging him with murdering Bradley Johnson, and his punishment was fixed at four years' confinement in the penitentiary. He was denied a new trial and by this appeal seeks a reversal of the judgment. In his motion for a new trial a number of grounds therefor are set out, but in this court his counsel urge only three, which are: (1), that the verdict was not sustained by sufficient evidence and is flagrantly against it; (2), that the court erred in refusing to admonish the jury as to the effect of testimony introduced in rebuttal by the Commonwealth as to the moral character of two of defendant's witnesses, and (3), that the jury arrived at the verdict by lot.

In disposing of ground (1), it will not be necessary to make a detailed statement of the evidence, since a general statement of its substance will suffice to show the insufficiency of that ground. The killing occurred on the late afternoon of May 23, 1923, on the front porch of a commissary store operated by a coal mining company in Harlan county. The witnesses for the Commonwealth testified that the first they heard or saw of the difficulty was defendant pointing his pistol at the deceased and saying to him, in substance, "Let me alone," or "Go away and let me alone, you have followed me long enough;" or "Go away, I told you to leave;" that deceased said in reply, "Where do you want me to go?" and defendant answered, "I don't care where you go so you leave here," and that almost immediately thereafter defendant fired four shots

inflicting five wounds upon deceased's body, two of which were vital and from which he died within less than twenty-four hours. Those witnesses, or some of them, also testified that deceased had nothing in his hands at the time, nor was he making any demonstration, so far as they could detect. On the contrary, defendant testified that he went upon the porch, with deceased following him, and when he discovered the latter following him he drew his pistol and deceased remarked, "You tried to get smart last night," whereupon defendant denied that statement and pointed his pistol at the deceased, and that when the latter commenced to push back his coat and said, "I am going to kill you," he fired the four shots in rapid succession. Defendant is supported but little, if any, as to the remark made by deceased on the porch just preceding the shooting, although it was shown that deceased had in his right hip pocket a scabbard with a pistol in it, but neither of them was in anywise removed from the pocket but which was done by others after the deceased was shot. It is also in proof that both of the involved parties were admirers of Fannie King, who lived in that vicinity, and to whom defendant was engaged to be married. He was visiting at her home on the night of May 22, when deceased and another came to the house and there was some disturbance, which the evidence tends to show was brought about by the deceased and his companion. It resulted in the young lady, as well as her father, inviting the deceased and his companion to leave the house, which they did, but before doing so deceased threatened to kill defendant, or if not the latter would kill him, and he and his companion tarried in front of the King residence for some time thereafter, and he was heard by several witnesses to utter threats against defendant while he remained near the residence, and he likewise threatened defendant on the same night after he left the King premises and went to his hotel in the city of Harlan. He made the same threats, in substance, according to the testimony for defendant, the next day, the last time being while he was on his way to the commissary the same afternoon of the shooting. A statement by the deceased, made *in extremis*, was, in substance, that he and defendant had some difficulty at the King residence the night before, in which the latter accused him of trying to "raise a rough house," and that at the time of the shooting he was trying to make peace with defendant. Some of the prose-

cuting witnesses testified that deceased raised his right hand after the firing of the first shot, and defendant himself testified that deceased did raise both his hands after the firing of the second shot, which was followed by two others, and it is not shown which one or ones were fatal.

It is no doubt true, or at any rate it was so shown by a preponderance of the testimony, that deceased entertained animus against defendant, engendered, no doubt, over the fact of the latter's attentions to Miss King, but that fact alone does not furnish a legal excuse for the homicide. It is potent only for the purpose of establishing the probabilities of what happened at the time of the homicide in the absence of direct proof upon the subject; but when we examine the testimony for the Commonwealth as to what occurred at that time, we are not prepared to say that the jury was unauthorized in returning the verdict it did, upon the ground that the shooting was premature and was not necessary at the time to protect the defendant from death or great bodily harm at the hands of the deceased. If the testimony of the Commonwealth is true (and which the jury necessarily so found), the defendant fired the shots at a time when he was neither in actual nor apparent danger, and such conclusion by the jury must be upheld by us, unless it was so flagrantly against the evidence as to indicate that the verdict was the result of passion or prejudice on its part, which we are not prepared to do. We, therefore, conclude that ground (1), is not sustained.

In support of ground (2), we are cited to a number of cases from this court, which are set out in the case of McDaniel v. Commonwealth, 185 Ky. 608, and also to the cases of Copley v. Commonwealth, 184 Ky. 185; Stacey v. Commonwealth, 189 Ky. 402, and Ayers v. Commonwealth, 195 Ky. 343, but an examination of all of them shows that none of them dealt with, or disposed of, the precise question we have here. The impeaching testimony that called for an admonition by the court as to its purpose in most of those cases consisted of prior contradictory statements made by the impeached witness and was not *reputation* testimony, as is true in this case; while in some of them the impeaching testimony related to the moral character of *defendant* himself after he had testified as a witness in his behalf, although in the two cases of Holly v. Commonwealth, 18 Ky. L. R. 441, and Ruark v. Commonwealth, 150 Ky. 47, it was expressly

held that the admonishing instruction need not be given as to that character of impeaching testimony although it was directed to the moral character of the defendant. However, cases preceding those two, and following them, hold that under such circumstances it is the duty of the court to so admonish the jury, provided the proper steps are taken by the defendant to preserve his right to require it. We can perceive some reason for the admonishment in such cases, since the jury might be influenced to convict the defendant because of his bad moral character, rather than because of his guilt of the crime for which he was tried; and, to prevent a conviction upon what is commonly designated as "general principles," the court should warn the jury of the purpose and effect of the impeaching testimony. Consequently, this court said in the case of Johnston v. Commonwealth, 170 Ky. 766 (referred to in the McDaniel case), "It is sufficient to call attention to the fact that in a criminal action it is error for the court to fail to define the purpose, by an admonition, for which such (character) evidence is introduced when the witness affected is the *defendant* who has testified in his own behalf." (Our italics.) But in that case, and in others cited therein, it was held that the admonition was not required in all cases even when the testimony related to the moral character of the defendant, if under all the circumstances, the failure to give it was clearly not prejudicial to the defendant's rights, which is true "when the evidence of guilt is clear and convincing and the trial is otherwise fairly conducted." We can also perceive sound reasons for the admonition when prior contradictory statemenst of a guilty nature are proven in the impeachment of a witness *other* than the *defendant,* since such contradictory statements possibly might be accepted by the jury as substantive proof.

We have, however, been unable to find any case wherein the admonition was required if the impeaching testimony related only to the moral character of a *witness* other than the defendant, and the reason above referred to for the admonition does not exist in that case. Surely no juror of ordinary intelligence could possibly be misled, or detrimentally influenced, by testimony impeaching the moral character of a witness for defendant. Such testimony does not tend in the least to besmirch or blacken the character of the defendant, nor to create any prejudice in the minds of the jurors against him. Nor does it

furnish an opportunity for the jury to consider the impeaching testimony as substantive evidence, as is possibly true in the case of proven contradictory prior statements by the witness. Therefore, the reason for the admonition does not exist as to the character of impeaching testimony involved in this case as it does in the instances referred to, and it is a well known principle in the law that "when the reason ceases the rule ceases." We, therefore, conclude that it was not error for the court to decline to give the admonition in this case, although we would not condemn the action of the court in doing so when requested. Neither do we think that the impeaching testimony was incompetent upon the ground that it related to the moral character of the witnesses at a time prior to the giving of their testimony, which was six months. It is true that in a number of cases we have held that "evidence of bad character at a time, long anterior to the day of trial, should not be admitted," etc. (Steele v. Commonwealth, 192 Ky. 223.) But we have found no case where the testimony related to a time only six months prior thereto it was held incompetent.

The showing as to the verdict having been arrived at by lot, complained of in ground (3), was furnished by the testimony of three of the jurors, one of whom made an affidavit, and the other two testified on the hearing of the motion for a new trial. It was shown by that testimony that the twelve jurors agreed that defendant was guilty of voluntary manslaughter, although when they first retired two of them voted for an acquittal. After they had agreed that defendant was guilty of voluntary manslaughter, they then agreed for each of them to write on a slip of paper the punishment which the juror was in favor of inflicting, and to add all those amounts and divide the sum by twelve, and see what it would amount to. That suggestion or agreement was carried out and it was found that one or two of the jurors put down nothing, but the quotient of the various sums put down by other jurors amounted to four and one-third years, and according to the testimony of all three of the jurors the whole twelve then agreed to fix the punishment at four years' confinement in the penitentiary, and the verdict was so returned. In a number of cases from this court, the latest two of which are Bennett v. Commonwealth, 175 Ky. 540, and Choate v. Commonwealth, 176 Ky. 427, the practice of arriving at a verdict in that manner is condemned, but in all

of them, including those two, it was held that it was not one "decided by lot," within the meaning and contemplation of subsection 3 of section 271 of the Criminal Code of Practice, and did not furnish grounds for a new trial because the verdict was "decided by lot."

It is insisted, however that defendant is entitled to a new trial under the latter statement of the subsection referred to, saying, "or in any other manner than by a fair expression of opinion by the jurors," since it is contended that the verdict in this case was arrived at in the forbidden manner. In the first place we are not prepared to agree with that contention. The manner of arriving at a particular verdict might be one to be condemned, as was done in the cases, *supra,* yet it may be one which records the "fair expression of opinion by the jurors,". and in this case it is conclusively shown that all of the twelve jurors agreed to the four years' imprisonment, and that the method employed was only for the purpose of fixing a period upon which all of the jurors would agree. If, however, it were otherwise, the fact could not be developed by the testimony of the jurors alone, since under the express provisions of section 272 of the Criminal Code, "A juror can not be examined to establish a ground for a new trial, except it be to establish that the verdict was made by lot." We have found that it was not so done in this case, and any other grounds for impeaching the verdict should be established by witnesses other than jurors. There were none such in this case and for that reason, also, this contention can not be sustained.

We, therefore, conclude, after a thorough consideration of the whole case, that no grounds exist for disturbing the verdict and the judgment is accordingly affirmed.