STATE, RESPONDENT, *v.* PADDOCK, APPELLANT.

(No. 6,573.)

(Submitted January 22, 1930. Decided February 8, 1930.)

[284 Pac. 549.]

*Mr. Desmond J. O'Neil,* for Appellant, submitted a brief and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. T. H. MacDonald,* Assistant Attorney General, for the State, submitted a brief; *Mr. MacDonald* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Defendant was convicted of the crime of rape upon his twelve-year old daughter, and judgment was pronounced against him. His motion for a new trial was denied, and he appealed from the judgment and from the order denying the motion. Only such portion of the evidence will be alluded to as we deem necessary in considering the questions raised.

The record discloses that prosecutrix, Ivy Paddock, and the defendant, were living together at the home of defendant's sister at Glendive, when the crime is alleged to have been committed. No one else was living in the house at the time. Prosecutrix testified that she and the defendant slept in the same bed and that the crime was committed on July 3, 1928. On her cross-examination defendant propounded the following question: "Did you not at that time [referring to the time when she was living with her father in Glendive] have a conversation with your father, in which your mother was discussed, and you told your father that your mother couldn't do anything wrong, and that just before you left Minneapolis, in May, 1928, your mother had let you stay all night with John Broberg?" Objection to this question was sustained.

On the fifteenth day of March, 1929, Dr. Danskin examined the private organs of prosecutrix, and found that the vaginal orifice was large enough to have been entered at some time previous to the examination, and that the hymen had been broken. He said it was impossible to determine the exact time when this may have happened, and that the condition which he found might have been brought about otherwise than through sexual intercourse.

The defendant denied that he ever had sexual intercourse with prosecutrix. He offered to prove that prosecutrix told him that just before she left Minneapolis in May, 1928, her mother let her stay all night with John Broberg, for which her mother received $5 from John Broberg. This evidence was excluded by the court, and error is assigned in so doing, and in refusing permission to cross-examine prosecutrix relative to this statement. Defendant contends that this evidence should have been admitted to explain, consistently with his innocence, the physical condition of prosecutrix as disclosed by the doctor's examination.

The general rule is that it is no defense to an accusation such as this that prosecutrix may have had improper relations with other men. (*State* v. *Richardson,* 63 Mont. 322, 207 Pac. 124.) An exception to the rule exists in some cases, and evidence of improper relations with other men is admitted to rebut the testimony of a physician regarding the absence of the hymen, or to account for a condition of pregnancy. (33 Cyc. 1481.) Defendant contends that by reason of the doctor's testimony this case falls within the exception, and that it was error to exclude the offered evidence. The opinion in the case of *State* v. *Richardson,* supra, is attacked as being erroneous, and the contention is made that the dissenting opinion of Mr. Justice Galen in that case states the correct rule applicable to a case such as this.

There are many cases supporting the view that where the state introduces evidence showing that the acts of defendant brought about a condition of pregnancy, or a destruction of the hymen, the defendant has the right to show that prosecutrix

had improper relations with other men at about the time when she claims the defendant had intercourse with her, in order to account for her condition compatibly with his innocence. Among such cases are the following: *State* v. *McPadden,* 150 Minn. 62, 184 N. W. 568; *Commonwealth* v. *Duff,* 245 Mass. 81, 139 N. E. 351; *Atkeison* v. *State,* 100 Tex. Cr. Rep. 313, 273 S. W. 595; *O'Chiato* v. *People,* 73 Colo. 192, 214 Pac. 404; *Climer* v. *State,* 162 Ark. 355, 258 S. W. 323; *Thomas* v. *State,* 178 Ark. 381, 11 S. W. (2d) 771; *Fuller* v. *State,* 23 Ariz. 489, 205 Pac. 324; *State* v. *Orton,* 69 Utah, 304, 254 Pac. 1003; *Kayes* v. *Commonwealth,* 221 Ky. 474, 298 S. W. 1096; *State* v. *Edwards,* 33 N. M. 51, 261 Pac. 806; *State* v. *Quirk,* 38 Wyo. 462, 268 Pac. 189; *State* v. *Williams,* 161 La. 851, 109 South. 515; *People* v. *Russell,* 241 Mich. 125, 216 N. W. 441; *State* v. *Kraus,* 175 Minn. 174, 220 N. W. 547. But here there was no evidence introduced by the state that defendant caused the physical condition of prosecutrix found by the physician. The doctor did not testify that in his opinion the hymen had been ruptured at or about the time that defendant is alleged to have had intercourse with prosecutrix. He frankly conceded that it was impossible to tell when the act causing the breaking of the hymen had taken place. He also said it might have been caused otherwise than through sexual intercourse. His evidence did not corroborate that of prosecutrix that defendant had intercourse with her (*People* v. *Shaw,* 158 App. Div. 146, 142 N. Y. Supp. 782); nor did it go so far as to show that anyone actually had, but only that someone might have had, copulation with her.

Prosecutrix did not deny that she had had intercourse with other men, as in the *Richardson Case,* and hence the question whether we would adhere to the views in that case is not here presented. We are asked here to go further than did Mr. Justice Galen in his dissenting opinion in that case.

In the case of *People* v. *Brehm,* 218 App. Div. 266, 218 N. Y. Supp. 469, the court held that, where a physician had testified that the hymen of prosecutrix had been ruptured, but that he was unable to say when it had been done, it was

error to refuse permission to cross-examine prosecutrix as to illicit relations with other men. But here the offered proof would not have established that she had had intercourse with John Broberg. It would simply have shown that she made such a statement. Her oral declaration to that effect was not competent for that purpose. (*State* v. *Haynes,* 116 Or. 635, 242 Pac. 603; *State* v. *Rogers,* (Idaho) 283 Pac. 44.)

While we are aware that an accusation of this kind is easily made and hard to disprove, and that great liberality should be allowed in the cross-examination of prosecutrix, we cannot say that the court erred in excluding the offered testimony, and in denying the right to cross-examine prosecutrix concerning the statement purported to have been made by her, under the circumstances here disclosed.

Defendant also assigns error in permitting the state to show ▮ that he had intercourse with prosecutrix previous to the date alleged and about three months before she left Minneapolis. Contention is made that this evidence was not admissible, because the proper foundation as to time and place had not been laid, and that the act was too remote in point of time. This evidence was properly admitted for the purpose of corroboration (*State* v. *Peres,* 27 Mont. 358, 71 Pac. 162; *State* v. *Vinn,* 50 Mont. 27, 144 Pac. 773; *State* v. *Harris,* 51 Mont. 496, 154 Pac. 198), and is not open to the objections contended for.

Mr. Wigmore, in his work on Evidence (vol. 1, 2d ed., sec. 399), in discussing this question, says: "The limits of time over which the evidence may range must depend largely on the circumstances of each case, and should be left to the discretion of the trial court." (See generally, on this subject: *State* v. *Wichers,* 149 La. 643, 89 South. 883; *State* v. *Morgan,* 146 Wash. 109, 261 Pac. 777; *State* v. *Sysinger,* 25 S. D. 110, Ann. Cas. 1912B, 997, 125 N. W. 879; *State* v. *Stone,* 74 Kan. 189, 85 Pac. 808.) The court did not abuse its discretion in admitting evidence of the prior act of the parties under the circumstances here presented.

Defendant contends that the court erred in refusing to give ▮ the following instruction tendered by the defendant: "You are instructed that if you find from the evidence that the complaining witness, Ivy Paddock, failed to make prompt complaint of the rape alleged to have been committed upon her, such failure, if not satisfactorily explained, is a circumstance to be considered by you in determining the weight to be given her testimony, and in determining the weight and credibility of her testimony, you should consider such failure to make complaint in connection with all facts and circumstances proved during the trial."

Whatever the rule may be elsewhere, in this state "the rule which requires a prosecutrix raped by force to make immediate outcry or disclosure, or stand discredited on the trial, has no application to a prosecution for the rape of a female under the age of consent." (*State* v. *Peres,* supra.) It was not error to refuse this offered instruction. (*People* v. *Fraysier,* 36 Cal. App. 579, 172 Pac. 1126; *State* v. *Bowman,* 278 Mo. 492, 213 S. W. 64.)

Error is also predicated upon the court's action in overruling ▮ ing objection to a question propounded to Dr. Danskin, designed to elicit the result of his examination of prosecutrix. The court did not err in overruling the objection.

While the record in this case leaves doubt in our minds as to ▮ the truth of some of the statements of the prosecutrix, we are not warranted in overturning the verdict of the jury, based upon sharply conflicting evidence, or interfering with the action of the lower court in denying the motion for a new trial.

The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS and FORD concur.

MR. CHIEF JUSTICE CALLAWAY Concurring Specially: This case has caused the court much concern. The defendant may have raped his infant daughter, as she says he did. On the other hand, it may be that the girl, following a suggestion made by her mother (who is estranged from her hus-

band, the girl's father), has falsely accused her father, perjured herself to accomplish his conviction.

Prosecutrix was asked if, being in Terry, she did not have a conversation with her father, in the presence of her grandmother, Dan Paddock and Ada Paddock, in which she said, "I want to go back to Minneapolis; it is too dead here in Terry"; and if her father did not respond, "No, you can't go back to Minneapolis, as long as your mother is leading the life she is leading, or until you are of age"; and if she did not reply, "I will, too; I will put you in jail; my mamma told me what to do to put you in jail." She denied the conversation utterly. On the contrary, her father, her grandmother, and Ada Paddock, her aunt, testified that the conversation occurred.

The jury were instructed, correctly, that they were the sole judges of the credibility of witnesses and of the weight to be given to their testimony. They saw and heard the girl, her father, and the other witnesses, upon the stand, and believed the girl. From her demeanor upon the stand, her manner of testifying—from what she said and how she said it—the jury must have believed she told the truth; and by the same standards they evidently disbelieved the defendant. The advantageous position of the jury and trial judge, as compared to that of the reviewing court, has frequently been remarked. As to the facts, the jury's verdict, approved by the trial court in denying the motion for a new trial, is conclusive upon us. (*State* v. *Brodock,* 53 Mont. 463, 164 Pac. 658; *State* v. *Chavez,* 85 Mont. 544, 281 Pac. 352; *State* v. *Harkins,* 85 Mont. 585, 281 Pac. 551.) And this is true, although the verdict rests upon the unsupported testimony of the prosecutrix. In *State* v. *Peres,* 27 Mont. 358, 71 Pac. 162, this court pointed out that it has been generally held by courts of last resort in this country, in the absence of any statute, that such a conviction will not be disturbed for lack of evidence corroborating the prosecuting witness; while section 3120 of the Code of Civil Procedure of 1895 provided that the direct evidence of one witness, who is entitled to full credit, is sufficient for proof of any fact, except perjury and treason. Section

10505, Revised Codes 1921, is a re-enactment of section 3120, supra.

This court has repeatedly commented upon the ease with which the charge is made and the difficulty of disproving it, even by one who is guiltless. (*State* v. *Gaimos,* 53 Mont. 118, 162 Pac. 596; *State* v. *Moe,* 68 Mont. 552, 219 Pac. 830; *State* v. *Wilson,* 76 Mont. 384, 247 Pac. 158.) With our law in its present state, the fate of one on trial for rape, with no evidence against him except that of the prosecuting witness, must rest with the jury and the sound discretion of the trial judge. No error appearing, this court must follow the law, regardless of its doubts upon the merits of the case.

With respect to the assignment of error predicated upon the court's refusal to permit cross-examination of the prosecutrix, I do not see any error. The question related only to a conversation alleged to have been had between her father and herself. If she had answered the question in the affirmative, it would not have proved that she stayed all night with John Broberg. If she had in fact slept with Broberg, it would not have tended to disprove her testimony respecting her father's conduct. The main question was: Did her father rape her? The unrelated question whether Broberg did has nothing to do with the case; nor can I see how an affirmative answer to the question would have illustrated Dr. Danskin's testimony in any way. The authorities fully sustain Mr. Justice Angstman's opinion.

MR. JUSTICE GALEN: I dissent. Where, as here, the state, in attempt to establish the guilt of a person charged with statutory rape, introduces the evidence of a physician, to corroborate the testimony of the prosecutrix, showing the absence of the hymen and the enlargement of her sexual organs, the defendant should be permitted, on cross-examination of the prosecutrix, to examine her respecting her admissions concerning improper relations with other men, thus explaining her condition compatibly with the defendant's assertion of innocence. The testimony of a physician who made examina-

tion of a girl months, or even years, after the date of the commission of the alleged offense would constitute strong corroboration of the prosecutrix, and the only manner by which the accused could to some extent counteract its effect was by showing her improper relations with other men, provable by her own admissions. In my opinion, the defendant should have been permitted to relate her admissions made to him respecting her relations with John Broberg and to cross-examine her with reference to such admissions.

Here the accused stands convicted upon the testimony of his daughter, who had, in the presence of his mother, his son, and Ada and Dan Paddock, upon his refusal to permit her to return to Minneapolis, threatened him by saying: "I will, too; I will put you in jail; my mamma told me what to do, to put you in jail." There was no corroborative testimony, other than that of the physician, to the effect that the hymen of the prosecutrix was broken and her sexual organs enlarged. Thus it became material, as reflecting upon the credibility of the witness, as well as to explain her physical condition, to know whether she had had sexual relations with others than the accused. Here declarations made in this respect were competent. If, in fact, "her mother let her stay all night with John Broberg, for which her mother received $5 from John Broberg," a possible explanation of the enlargement of her sexual organs would thus be afforded.

I can see no distinction, on principle, between cases where a pregnant condition is first shown, and those involving evidence of the destruction of the hymen and enlargement of the sexual organs of the prosecutrix. The statute permits a wide range for cross-examination, and the courts should incline to extend, rather than restrict, the right. (*Kipp* v. *Silverman,* 25 Mont. 296, 64 Pac. 884; *Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805.) I reaffirm my views expressed in the case of *State* v. *Richardson,* 63 Mont. 322, 207 Pac. 124, and believe them applicable to the instant case.

Rehearing denied February 19, 1930, MR. JUSTICE GALEN dissenting.