STATE, RESPONDENT, v. NEWMAN, APPELLANT.

(No. 6,748.)

(Submitted December 11, 1930.  Decided December 23, 1930.)

[294 Pac. 377.]

*Mr. Clarence Hanley*, for Appellant, submitted a brief and argued the cause orally.

*Mr. L. A. Foot*, Attorney General, and *Mr. S. R. Foot*, Assistant Attorney General, for the State, submitted a brief, the latter arguing the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The defendant was accused of the crime of statutory rape, and also of a prior conviction of felony. He pleaded not guilty; trial resulted, the jury found him guilty, and judgment was pronounced against him. He moved for a new trial which was denied. From the judgment and the order denying him a new trial, defendant appealed to this court.

The story the transcript tells smacks rather of the early-day mining camps than of the Montana of the present era. Defendant, once before a convict, ran a dance-hall called The Bowery, where he sold whisky over a ''lunch-counter,'' and provided dancing girls who worked upon a percentage basis. The success of the girls depended upon the number of drinks they persuaded their partners to buy. The evidence respecting the conduct of defendant's place might serve to bring to minds of the oldsters the warning note of the well-known ballad of the early '90's, in which the singer, after narrating

that such things were done, and said, on the Bowery, declared he would never go there any more!

According to the state's evidence, defendant employed prosecutrix to work at the lunch-counter in The Bowery, but quickly transferred her to the dance-floor, although he knew that she was but sixteen years of age. He insisted upon her drinking whisky whenever her partner called for drinks at the bar,—which was at the end of each dance. One night when she was intoxicated defendant took her from the dance-floor to his bedroom and there raped her. The bedroom was connected with the kitchen which adjoined the dance-hall. Twice again he did that. Then he came to stand before a bar himself, the probability of which he might, with the exercise of a little sense, have foreseen—the bar of justice, and he must now take what it dispenses.

1. The trial was begun on December 31, 1929. Prosecutrix and her married sister testified that prosecutrix was sixteen years of age when the alleged offense was committed and that she would not be seventeen until January 31, 1930. The sister said she had told defendant before prosecutrix went to work for him that the girl was only sixteen years of age. The mother of prosecutrix, who spoke English imperfectly, said the girl was sixteen, was born in 1913, but was confused as to the month. On cross-examination the witness said she had a paper at home showing when prosecutrix was born. During a recess the paper was procured and upon redirect examination it was offered, counsel for defendant saying, "We admit it in evidence." The document was a certificate of baptism, dated February 13, 1913, in which it was recited that prosecutrix was born January 30, 1913. It may be that the certificate would have been excluded had proper objection been made (*State* v. *Vinn*, 50 Mont. 27, 144 Pac. 773), but defendant's counsel, having consented to its admission, cannot now urge error because it was admitted. But we do not intimate that, in the condition in which the proof then was, its admission, even over objection, would have constituted prejudicial error.

2. The sister of prosecutrix who had worked for defendant before prosecutrix was employed by him, and who continued in his employment for some time thereafter, testified on cross-examination that she quit his employ about five months before the trial. Counsel for defendant then asked why she quit. An objection to the question was sustained. The court's ruling was right; the reason why the witness quit was wholly immaterial. So far as the context shows, counsel in propounding the question had no special object in view; a reasonable presumption is that he was on a fishing expedition, hoping that something valuable would fall to his net. We see no error in the court's ruling.

3. On direct examination prosecutrix told how defendant took her to the kitchen, forced her into the bedroom, threw her upon the bed, and accomplished the act of sexual intercourse. She said, "My mind was clear enough to know what was going on but I was so intoxicated I couldn't fight him off." After cross-examination upon the basis of this testimony, counsel for defendant asked: "And this was the first time you ever had this experience?" Objection having been made on several grounds, counsel explained that the question was designed "for the purpose of testing the credibility of the witness, and her memory." The court sustained the objection, rightly. *State* v. *Richardson,* 63 Mont. 322, 207 Pac. 124, and *State* v. *Duncan,* 82 Mont. 170, 266 Pac. 400, are directly in point.

4. Defendant denied the testimony of prosecutrix upon many material points, especially that he had ever had sexual intercourse with her. He also sought to show that he was incapable of committing the act by reason of impotency; he said that ever since his release from the penitentiary on October 27, 1924, he had lost confidence in himself, considered himself impotent. He gave his age as fifty-two, but was confronted with the fact that on December 16, 1929, he had made application for a marriage license in which he gave his age as forty-two, and the age of the girl he intended to marry as nineteen. Evidently the jury did not believe his story.

The evidence amply sustains the verdict. The instructions were as favorable to defendant as he had a right to demand. The judgment and order are affirmed.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.