STATE, Respondent, v. REID, Appellant.

No. 9343.

Submitted December 16, 1954. Decided February 19, 1954.

Rehearing Denied March 29, 1954.

267 Pac. (2d) 986.

Mr. Ralph J. Anderson and Mr. Stanley P. Sorenson, Helena, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Hubert J. Massman,

554

Asst. Atty. Gen., Mr. Bernard W. Thomas, County Atty., Chinook, for respondent.

Mr. Anderson and Mr. Massman argued orally.

MR. CHIEF JUSTICE ADAIR:

The offense is rape of a female under the age of 18,—the punishment, 2 years.

At the time charged, the prosecutrix was 16 years old and living in the home of her parents at Havre, Montana.

At about 12:15 o'clock on the particular morning charged, the prosecutrix, sitting in her home, heard a loud noise coming from without, whereupon she slipped on her jacket and stepped into the street that passes in front of her home to see what had happened. There, two doors from her home, she observed the wreckage of two automobiles that had just crashed. While she was viewing the scene a large blue Lincoln automobile bearing Texas license plates pulled up and parked in front of the wrecked cars, whereupon appellant got out, approached the prosecutrix, asked her how the accident happened,—asked her if she could direct him to "Bob's Drive In" and persuaded her to enter his car to point out the way to such drive-in.

Appellant drove past the drive-in without stopping, proceeding easterly on U. S. Highway No. 2 until he arrived in the town of Lohman, Montana. There he stopped his car near the Midway Tavern which he entered, returning a few minutes later with two glasses and two bottles of a soft drink known as "Squirt."

The appellant and the prosecutrix drank the "Squirt" at appellant's car, following which appellant returned the two empty bottles and glasses to the tavern, re-entered the car and then drove westerly from Lohman on U. S. Highway No. 2, until he came to the ruins of the old Tana Club, where he turned south taking a side road and proceeded southerly thereon until he came to the top of a hill, located about one-half mile south of said ruins where he stopped his car,—killed the motor,— alighted and walked to the rear of the car where he remained a

couple of minutes, following which he re-entered his car wherein prosecutrix had remained.

The prosecutrix testified that immediately upon re-entering the car the appellant removed his coat and then accomplished an act of sexual intercourse upon her in the car so parked on the hill top, following which act the appellant drove directly to Havre without making any stop whatsoever until he dropped prosecutrix off about one block from her home.

It was 2:10 o'clock a. m. when prosecutrix reentered the home of her parents. According to her mother's testimony, the prosecutrix "was very hysterical, her clothes were all crumpled and her hair looked as if it had never been combed."

The girl's father was there when she returned from the ride. He testified that at such time prosecutrix "was very excited and upset and crying * * * saying she had a pretty rough time * * * said some man had pulled her into his car and had taken her out * * * She said she had been raped."

The father called the police at once and at 2:15 o'clock a. m. two police officers, responding to such telephone call, came to the home, where prosecutrix told them she had been raped by a strange man, the description of whom she gave to the police as well as the description of the automobile wherein the offense against her was committed.

At the direction of the police the prosecutrix was immediately taken to the office of her family's doctor and there given a physical examination, during which time the police conducted a search for the perpetrator of the offense.

From the description supplied them by the prosecutrix, the police located appellant's car which was parked at the rear of a hotel and from the hotel clerk the officers obtained the name and room number of the car's owner, following which they proceeded to such room where they found appellant and took him into custody.

At the police station the prosecutrix saw the appellant and identified him as the man who that morning had taken her to

the hill top south of the old Tana Club and there accomplished an act of sexual intercourse upon her.

By an information filed in the district court of Blaine County, Montana, the appellant was charged, tried, and, by a jury's verdict, convicted of the crime of statutory rape committed upon the prosecutrix.

From an order denying his motion for a new trial and from the judgment of conviction entered against him, the appellant has appealed.

*Venue.* Appellant contends that the state failed to prove that the act of sexual intercourse was accomplished "at the County of Blaine, in the State of Montana," as charged in the information. Such contention is wholly lacking in merit.

The prosecutrix testified that the place where appellant stopped his car on the hill top, and then and there accomplished an act of sexual intercourse upon her, is located about a half mile south of the ruins of the old Tana Club.

Upon appellant's arrest he was taken to the police station where, upon being confronted with the prosecutrix, he told the two arresting officers that he had never seen the prosecutrix before in his life.

Later that same morning, the two arresting officers, accompanied by a photographer and the prosecutrix, drove to the hill top so situate about a half a mile south of the ruins of the old Tana Club where, upon examining a place there pointed out to them by the prosecutrix, they found automobile tire tracks and also foot prints which were photographed. Upon comparison it was found that the tire marks photographed matched the tread marks of appellant's car and that the heels on the footprints photographed matched the heels on appellant's shoes.

It was not until such evidence had been obtained that the appellant admitted that he had picked the prosecutrix up near her home; that he had driven with her to Lohman and thence to the hill top south of the old Tana Club where he stopped his car,—got out,—walked behind the car and then, after parking awhile, drove prosecutrix back to Havre. However appellant at

all times denied that while so parked on such hill top he had accomplished an act of sexual intercourse upon the prosecutrix.

Police officer Williams, a witness for the state, testified that on the morning in question he and police officer Zortman examined the place on the hill top so pointed out to them by the prosecutrix. He further testified:

"Q. And did you find any sign of tire tracks at that place? A. Yes, we did.

"Q. And did you find any footprints at that place? A. Yes.

"Q. And do you know in what county that particular spot is located? A. It's located in Blaine County."

This testimony stands undisputed. Thus there is uncontradicted, positive, creditable direct evidence that the particular spot where appellant parked his car and then and there accomplished the act of sexual intercourse upon prosecutrix is located in Blaine County as is charged in the information. Compare, State v. McGuire, 107 Mont. 341, 347, 88 Pac. (2d) 35, and State v. Williams, 122 Mont. 279, 202 Pac. (2d) 245.

*Statutory Rape.* The appellant was charged and convicted of having committed the crime of statutory rape as such offense is defined by R. C. M. 1947, sec. 94-4101, subd. 1, which provides that rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator when such female is under the age of 18 years.

The undisputed evidence is that at the time charged, the prosecutrix was but 16 years old and therefore under the statutory age of consent.

*Non-marriage.* Appellant contends that the evidence fails to prove that the prosecutrix was not the wife of the appellant at the time charged in the information. Such contention is wholly lacking in merit.

As before shown police officer Herbert Williams testified that immediately following appellant's arrest and when he was first confronted with the prosecutrix at the police station appellant "told us that he had never seen her before in his life."

The record shows that the prosecutrix was born at Great Falls,

Montana, and that in February 1952, she, together with two younger sisters and her father and mother, moved to Havre, Montana, where all have since resided.

A certified copy of the original birth certificate of prosecutrix filed but 13 days after her birth was received in evidence without objection. This certificate shows the name of the prosecutrix as well as the names of her father and mother and it shows that, at the date of the filing thereof, the prosecutrix then had and was given the same name that she bore at the time of appellant's trial and that her surname then was and still is the same as that of her parents, both of whom were witnesses for the state at appellant's trial and that such surname was not and is not "Reid."

At his trial the appellant was represented throughout by an attorney of long experience in defending persons accused of crime. Appellant voluntarily took the stand as a witness in his own behalf. On his direct examination the appellant testified that his name is William Thomas Reid; that he is a married man, 46 years old; that his home is in Oklahoma City; that he is an oil operator engaged in speculating in leases and royalties; that he came to the State of Montana about a month before the date charged in the information; that this was his first trip in Montana and that he lived at a named hotel located in Havre.

Appellant was further interrogated and answered as follows:

"Q. Now, do you know the complaining witness? A. I do now.

"Q. When did you first see her? A. I don't know whether it was before the 4th or not. She said that she met me in the cafe, but I don't remember ever seeing her. * * *

"Q. Do you know her father and mother? A. Never saw them until this time. I think I saw her father the night this happened there in the jail at Havre.

"Q. Did you ever tell her that you knew her father and mother? A. No, sir. I didn't know whether she had parents or not. I knew nothing about it. * * *

"Q. Did you ever tell her that night that you knew her

father and mother? A. No sir. I never told her anything like that. I didn't even know she had parents.''

On his cross examination of the witness, the county attorney said to the appellant that as he understood it the appellant never knew the prosecutrix before the time charged in the information, to which the appellant replied, ''That's right.'' Appellant then made answer to the following questions put to him by the county attorney, viz:

''Q. Nor her parents? A. No, I did not know them.

''Q. You admit that now? A. I have never made any other statement. I don't know anything about her parents.

''Q. Now, how long were you on this ride? A. It was sometime after midnight.

''Q. And about what time was it that you got back to Havre? A. Oh, about two o'clock.''

Appellant also testified on his direct examination that after leaving Lohman he and the prosecutrix drove westerly toward Havre until they came to the ruins of the Tana Club. He then testified:

''Q. Did anyone suggest going any other place? A. Yes, sir.

''Q. And what was that? A. This little girl suggested, she said that you can get a better view if you drive up on this— on the top of this hill. That's how we happened to drive up there.

''Q. And that was south of the Tana Club? A. Yes, it's south on that road. * * *

''Q. And after you got upon the hill, did you stop your car? A. Yes, sir.

''Q. Which way were you heading? A. Heading north.

''Q. You killed the motor? A. Oh, yes. * * *

''Q. I think her testimony was that you got out of the car— did you get out? A. Yes.

''Q. How long were you? A. Just long enough to walk behind the car, and I was there for another minute or two.

''Q. And she testified you came back to the car and took your coat off, did you do that? A. I never took my coat off.

''Q. You heard her testimony this morning—did you have

sexual intercourse with her in the car up on that hill? A. I definitely did not."

On her direct examination the prosecutrix denied that she had ever seen the appellant prior to the time that he picked her up at the scene of the automobile wreck on the morning in question. She was interrogated and made answer as follows:

"Q. And where did you talk to this person? A. In front of the accident.

"Q. How far from your house was the accident? A. I think it was about two houses from the corner. We live about the fourth house in.

"Q. And did you talk to more than one person at that place? A. No.

"Q. And who was it you talked to there? A. The defendant, Mr. Reid.

"Q. Can you point him out? A. Yes. (Witness points to the defendant, Mr. Reid.)

"Q. And have you ever seen Mr. Reid before that time? A. Not that I remember.

"Q. Had you ever talked to him before that time? A. No."

R. C. M. 1947, sec. 94-7209, provides that the rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in the Penal Code. The law does not require demonstration. It does not require such a degree of proof as, excluding possibility of error, produces absolute certainty, because such proof is rarely possible. Moral certainty is only required, or that degree of proof which produces conviction in an unprejudiced mind. R. C. M. 1947, sec. 93-301-4.

The law does not make any distinction between the different degrees of evidence. In the record before us there is presumptive, indirect and circumstantial evidence sufficient to produce conviction in an unprejudiced mind and beyond a reasonable doubt that the 16 year old prosecutrix was not the wife of the 46 year old appellant at the time appellant drove her to the hill top in Blaine County and there accomplished an act of sexual intercourse upon her. Compare State v. Williams,

9 Mont. 179, 23 Pac. 335; State v. Morrison, 46 Mont. 84, 125 Pac. 649; People v. Okopske, 321 Ill. 32, 151 N. E. 507, 509; State v. Seeb, 76 N. D. 473, 37 N. W. (2d) 341; State v. Baker, 30 Wash. (2d) 601, 192 Pac. (2d) 839, 842; Griffin v. State, 154 Tex. Cr. R. 295, 226 S. W. (2d) 869; Fields v. Commonwealth, 301 Ky. 551, 192 S. W. (2d) 478; People v. Truesdell, 124 Cal. App. 360, 12 Pac. (2d) 476.

In State v. Charlie Mun, 76 Mont. 278, 283, 246 Pac. 257, 258, this court held that that degree of proof which produces conviction in an unprejudiced mind is denominated ''moral certainty'' and that ''moral certainty'' and ''beyond a reasonable doubt'' the synonymous phrases.

*Doctor's Testimony.* The state's second witness was Dr. D. S. MacKenzie, Jr., a practicing physician and surgeon of many years experience and the family doctor of prosecutrix and her parents. On his direct examination the witness testified that at about 3:00 o'clock on the morning of the day charged in the information he made a physical examination of prosecutrix for the purpose of determining whether there were any spermatozoa within her vagina; that he found live male spermatozoa there present and that from such finding he concluded that within several hours previous the prosecutrix had experienced an act of sexual intercourse with a male person.

*Cross-Examination.* Appellant's counsel was allowed and he fully availed himself of the opportunity of thoroughly cross-examining Dr. MacKenzie as to any matters gone into or developed on the direct examination of such witness but counsel was not permitted to interrogate the doctor respecting professional services that he may or may not have rendered the prosecutrix months prior to the time charged in the information, nor was counsel, under the guise of exercising his right to cross examine the witness, permitted to introduce evidence of alleged unchaste conduct with others. The attempt to place such immaterial, irrelevant and highly prejudicial matters before the jury was very properly nipped in the bud by the trial judge. Compare State v. Collett, 118 Mont. 473, 476, 477, 167 Pac. (2d)

562

584; State v. Stevens, 119 Mont. 169, 178, 179, 172 Pac. (2d) 299.

Under the law as declared by R. C. M. 1947, sec. 94-4101, subd. 1, any man who accomplishes an act of sexual intercourse with a female under the age of 18 years, when such female is not his wife, is guilty of the crime of statutory rape. The *corpus delicti* is sufficiently proved by the testimony of the prosecutrix that she had sexual intercourse with the accused at the time and place set forth in the information. People v. Gallagher, 108 Cal. App. 128, 291 Pac. 626; 75 C. J. S., Rape, sec. 73, page 552, note 64.

Where, as here, the prosecutrix was under the age of consent evidence of immoral or unchaste conduct with others than the accused is inadmissible either by proving general reputation for unchastity or by proof of specific acts of immoral conduct. State v. Richardson, 63 Mont. 322, 332, 207 Pac. 124; State v. Newman, 88 Mont. 558, 561, 294 Pac. 377; State v. Paddock, 86 Mont. 569, 284 Pac. 549.

The law is as stated in State v. Duncan, 82 Mont. 170, 184, 266 Pac. 400, 405, viz.: "Under this provision [now R. C. M. 1947, sec. 94-4101, subd. 1], the consent of the female, the lack of knowledge of her age, or even her misrepresentation as to her age, and the lack of chastity of the female, and even the fact that she was at the time an inmate of a house of prostitution, are all immaterial matters; a conviction depends solely upon proof of intercourse and nonage, and if a man indulge in promiscuity with strange women he has only himself to blame if it later develops that he has unwittingly committed the crime of rape. Such is the law as declared by the law-making body of this state, and the province of the courts is to enforce the law as they find it."

The evidence is sufficient to warrant the verdict and judgment; the motion for new trial was properly overruled and we find no reversible error in the record before us. Accordingly the order and the judgment are affirmed.

MR. JUSTICE BOTTOMLY, FREEBOURN, ANGSTMAN and ANDERSON, concur.