STATE OF MONTANA, PLAINTIFF AND RESPONDENT, v. EVERETTE MOORMAN, DEFENDANT AND APPELLANT.

No. 9798.
Submitted September 23, 1957. Decided January 16, 1958.
321 Pac. (2d) 236.
Rehearing Denied February 7, 1958.

Sandall & Moses, Charles F. Moses, Billings, for appellant. Charles F. Moses argued orally.

Forrest H. Anderson, Atty. Gen., Robert J. Emmons, Asst. Atty. Gen., Joseph E. Buley, County Atty., Billings, for respondent. Joseph E. Buley, County Atty., and Robert J. Emmons, Asst. Atty. Gen., argued orally.

MR. CHIEF JUSTICE HARRISON:

Defendant was found guilty of statutory rape by the verdict of a jury. Motion for a new trial was made and denied and this

appeal followed. Five specifications of error are alleged by the defendant, all predicated upon the action of the district court in (1) sustaining objections to questions and offers of proof, (2) overruling objections to questions put to character witnesses on cross-examination, (3) denial of a motion for a continuance, (4) denial of the motion for a new trial, and (5) refusing to grant defendant's motion for a mistrial.

A statement of the facts in this case is not necessary for the purpose of this opinion and when required the particular evidence will be referred to.

The first contention of the defendant is that the court, by sustaining objections to questions propounded of witnesses for the state, limited the defendant's case in chief.

The testimony of the state's witnesses was confined to a period beginning at approximately 4:00 a.m. when the defendant met the complaining witness, and concluding when the defendant departed from the premises where the alleged offense occurred at approximately 6:30 a.m. Defendant argues that when the state limited its testimony to this period of time it eliminated from the jury any consideration of the investigation made by police officers, the result of any medical examination made thereafter, as well as any contrary statements made by the prosecuting witness.

While the defendant is presumed to be innocent until the contrary is proved, and the burden is on the state to prove the guilt of the defendant beyond a reasonable doubt, R.C.M. 1947, section 94-7203, and for that reason the burden of proof is at all times upon the state, yet there is a distinction between the burden of proof and the burden of evidence. In criminal cases the burden of proof never shifts, but the burden of the evidence may shift frequently. Underhill, Criminal Evidence, section 50, page 78 (5th ed.). Such is the situation in this case. The state presented sufficient evidence to make out a *prima facie* case and rested. At any time during cross-extmanation of the witnesses in the state's case in chief, defendant could have laid a foundation for impeachment, but he failed to do so. He

then attempted in his case in chief to lay such foundation by calling the state's witnesses as adverse witnesses under the provisions of section 93-1901-9, R.C.M. 1947, relating to calling the opposite party, his employee or agent, contending that under the provisions of section 94-7209, R.C.M. 1947, the rules of evidence in civil actions are applicable to criminal cases. In a criminal case the State of Montana is the opposite party to the defendant, section 94-4804, R.C.M. 1947, and the adverse witness statute is not applicable to a criminal proceeding.

Defendant made no effort to produce the evidence of the police officers or the medical examination, though counsel conceded upon the argument that such witnesses were available if it had been desired to call them.

The questions asked by defendant's counsel of state's witnesses upon cross-examination which were objected to by the state all dealt with actions of the witness on the stand or investigating officers after the time of the criminal offense and were improper cross-examination. None of the questions asked were for the purpose of impeachment, but dealt entirely with irrelevant and immaterial matters and were objected to on that ground.

Defendant also endeavored to show previous unchaste conduct with another by the prosecuting witness. As this court stated in State v. Reid, 127 Mont. 552, 267 Pac. (2d) 986, 991: "Where, as here, the prosecutrix was under the age of consent evidence of immoral or unchaste conduct with others than the accused is inadmissible either by proving general reputation for unchastity or by proof of specific acts of immoral conduct. State v. Richardson, 63 Mont. 322, 332, 207 Pac. 124; State v. Newman, 88 Mont. 558, 561, 294 Pac. 377; State v. Paddock, 86 Mont. 569, 284 Pac. 549."

In this situation the court committed no error in sustaining the objections and denying the offers of proof made by the defendant.

The second error contended arose on the following set of facts: The defendant introduced character witnesses and asked

them whether they knew the defendant's reputation for morality. They answered in the affirmative, and when asked whether it was good or bad they stated it was good. The state cross-examined these character witnesses by asking them whether or not they had heard any "reports" or "rumors" that the defendant had attempted to assault a woman, does not support his minor child, and had shot at his wife with a pistol. The defendant objected to the cross-examination and contends here that the court was in error in overruling his objections on three grounds: (1) That the questions embodied a statement of fact which could not be proved by independent evidence; (2) that the questions were not confined to the particular trait of character in question; (3) there was no testimony that these rumors or any of these statements or any of these facts were within the community in which defendant lived.

In support of the first proposition defendant cites two Montana cases, State v. Jones, 8 Mont. 505, 139 Pac. 441, and State v. Popa, 56 Mont. 587, 185 Pac. 1114, seemingly for the proposition that particular acts of misconduct may never be used on cross-examination to impeach the character witnesses.

Defendant especially relies on language in State v. Jones, supra, beginning at page 515 of 48 Mont., at page 445 of 139 Pac. While a superficial study of that case would appear to support defendant's contention, we feel a thorough analysis would not, for the case is clearly distinguishable from the present one. In that case the following question was propounded to the character witness: "Did you ever hear about the episode at the Castle when he went up there to beat up a woman?" This court in holding that the question was improper said: "The question as put by counsel assumed as. a fact that the defendant did go to the Castle for the purpose stated. Though the statement was in the form of an interrogatory, it was as objectionable as if it had been stated in the form of a declaratory sentence, and therefore was obnoxious to the rule against proof of particular facts. * * * It is never proper for counsel to so frame questions as to *assume the existence of facts*

which are not admissible if offered as independent evidence.''
Emphasis supplied.

It will be noted that in that case, the court made much of
the manner in which the question was framed. A cursory ex-
amination shows that the statement was framed in terms of
ultimate fact, thus the county attorney had assumed the exist-
ence of facts which were not admissible if offered as independ-
ent evidence.

However the Jones case also stands for the rule that had the
question been framed in proper language then there would
have been no impropriety in asking it. The following language
in 48 Mont. at page 516, 139 Pac. at page 445 supports this
thesis: ''The rule is well settled that, when a defendant in a
criminal case calls witnesses to testify that he possesses such a
general reputation in the community in which he resides as
tends to rebut the notion that he is guilty of the crime with
which he is charged, these witnesses may be questioned on cross-
examination as to their knowledge of disparaging rumors or
common reports affecting his reputation. As the favorable
testimony tends to sustain the presumption of innocence which
the law indulges in favor of the defendant, by introducing it
*the defendant tenders an issue of fact, viz., whether his repu-
tation is such as the witnesses say it is, and the prosecution has
the right to cross-examine the witnesses to ascertain the suffi-
ciency of the grounds upon which they base their statements.*
If therefore it can be shown that there are or have been *rumors*
or *reports* affecting the reputation, to this extent the statements
of the witnesses are shown to be without foundation in fact and
therefore not entitled to credit. * * * *The purpose of the
inquiry is to ascertain what the witness had heard to the dis-
paragement of the reputation,* and not his knowledge of particu-
lar acts of misconduct.'' Emphasis supplied.

It will be noted that this court stressed the form of the ques-
tion, that is, it should be framed in terms of ''reports'' or
''rumors.'' The reason for this is clearly set out in the under-
lined portion of State v. Jones, supra. The purpose of cross-

examination on reports or rumors is to test the credibility of the character witness, not establish his knowledge of the facts. The character witness says he knows the reputation of the defendant. To test his knowledge the state may cross-examine him on whether he has heard certain rumors or reports of certain acts or conduct of the defendant. Naturally the questions must be based on some degree of specificity as to the nature of the conduct or act and when it occurred or else it becomes too vague to answer intelligently. The rule was stated by Parke, B., in Reg. v. Wood & Parker, 5 Jur. 225 (Eng.): "The question is not whether the prisoner was guilty of that robbery [concerning which his character witness was cross-examined], but whether he was suspected of having been implicated in it. A man's character is made up of a number of small circumstances, of which his being suspected of misconduct is one."

The distinction set out above was more clearly recognized in State v. Popa, supra, 56 Mont. at page 590, 185 Pac. at page 1115, than in State v. Jones, by the following language that "whenever a defendant calls a witness to support his general reputation, he subjects him to all legitimate cross-examination and himself to whatever consequences may result therefrom. The purpose of cross-examining the witness concerning rumors of specific acts which reflect adversely upon the accused is to determine whether the witness in fact knows the general reputation, and, if so, whether he is testifying truthfully in regard to it." The question asked the character witness in the Popa case was: "Mr. Black, did you ever hear anybody say, in your community, that George Popa tried to drive anybody off his claim by using a shotgun?"

It becomes evident that the form of the above-question differs considerably from that in the Jones case, yet both refer to specific acts of misconduct. The distinction is that in the Jones case the question was framed in a manner which assumed the truthfulness or veracity of the specific act. In the Popa case the question was framed in terms of "rumor" or "report." The state's cross-examination in the instant case falls within

the scope of the rule laid down in State v. Popa, and defendant's first objection was properly overruled.

The second objection of the defendant was equally without merit. It should be noted that in the instant case the question asked by the defendant of his character witnesses was not confined to the particular trait in question as it properly should have been, State v. Popa, supra, but rather asked the witnesses whether they knew his reputation for morality. Morality is a generic term containing the sum total of all his moral traits, including honesty, fidelity, peacefulness, etc. Morality has been referred to as synonymous with character. Warkentin v. Kleinwachter, 166 Okl. 218, 27 Pac. (2d) 160.

While it is well-settled the state could not have introduced any witnesses of their own to testify on traits of character other than that in issue in the case, State v. Popa, supra, the same rule does not apply where the defendant himself fails to restrict the inquiry to the particular trait involved in the offense for which he is on trial. The prosecution in that case is not restricted in its cross-examination to the particular trait but may inquire into the defendant's entire character. In other words, the state may cross-examine a defendant's witness upon those matters which are in the scope of the testimony of the witness in his chief examination. Cook v. State, 46 Fla. 20, 35 So. 665; Annotation, 71 A.L.R. 1504, 1520.

As to the third objection defendant stated he had lived at his present address for fifteen years. Mr. Murray and Mr. Ostwald, character witnesses for defendant, stated they knew the defendant since he was a baby. There is no doubt that the specific instances were localized in the defendant's community as seen from the witnesses stating they had heard rumors or reports concerning the assault on the woman. He did not say he had lived any place other than Laurel. While the general rule may be as defendant states, that is, cross-examination of character witnesses must be based on acts within defendant's community. In this regard see citation of authority in Annotation, 71 A.L.R. 1504, 1517, 1535. It was not contended by

defendant or the state that the acts upon which the character witnesses were cross-examined occurred anywhere but in Laurel, the community where defendant had lived most of his life, the community in which the character witnesses knew him, the community in which they had heard the rumors and reports propounded to them. From the foregoing discussion it is apparent to this court that defendant's second alleged error is without merit.

The third error contended is the denial of defendant's motion for a continuance. The situation in this regard is that Lois Schmidt was subpoenaed by the defendant as a witness on his behalf. The subpoena, as served, was for the appearance of the witness on December 19, 1956, and a continuance in the date of trial was had to January 15, 1957. During the course of the trial defendant's counsel called the witness, apparently knowing she was not present in the courtroom. There was no showing that the missing witness had knowledge of the change in the date of the trial. Outside the presence of the jury, the defendant's counsel then orally moved the court for an order continuing the trial until the witness could be obtained and her testimony given.

The court requested counsel to state what he expected to prove by the witness. Counsel then stated that the witness, if present, would have testified that on the date of the alleged offense she was residing in the building, was awake upon the premises, and at that particular time heard no outcry, and the witness had conversation with the complaining witness and would state that the complaining witness denied intercourse with the defendant but admitted it with another; that the witness would further testify that she was present at an interview where certain statements were made by the complaining witness and by her mother. There appears in the record considerable discussion between court and counsel as to whether the evidence sought to be given by this witness would not be cumulative. Defendant's counsel admitted as to the interview there were other witnesses then present who could testify with regard

to the statements made. As to the absence of outcry the court observed that there had been no testimony by the complaining witness that there was any outcry.

The court took the matter under advisement until the following day and at that time the defendant called the mother of complaining witness as a witness in the absence of the jury and elicited from her the fact that the witness had been subpoenaed for December 19; that she had left the state about two weeks before with knowledge that her mother was going to testify in the case whenever it would be reset. It also developed from this witness that there were other witnesses present at the interview to which counsel had referred. Following this testimony the court denied a motion for a continuance for the reason there was no evidence on the part of the complaining witness of any outcry; that the testimony with regard to the statements allegedly made by the complaining witness to the absent witness would be for the purpose of impeachment and no foundation had been laid in the examination of the complaining witness for the admission of any such evidence; that the evidence would be cumulative and the same testimony could be given by other witnesses who were shown to be available. The court further commented on the absence of any showing that the witness had been advised of the continuance of the trial, or of the fact that the trial was to be had at that time, or that any effort was made to obtain the witness to testify at that time.

We have carefully examined the record and we find no error in this ruling of the court. In this regard it should be pointed out that a motion for postponement of a trial under the provisions of section 93-4910, R.C.M. 1947, can only be made upon affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to procure it. The statute further provides that if the adverse party admits that such evidence would be given, the trial shall not be postponed. The defendant did not comply with this applicable statute.

158

The fourth specification of error contends that the verdict ▮ of the jury was reached by lot. The applicable statute, section 94-7603, R.C.M. 1947, reads in part as follows: "When a verdict has been rendered against the defendant, the court may, upon his application, grant a new trial in the following cases only: * * *

"4. When the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of all the jurors, which may be shown as provided in the code of civil procedure."

Upon the motion for a new trial the defendant submitted the affidavit of one of the jurors to the effect that during the deliberations of the jury they were unable to agree upon the punishment to be given the defendant, and it was agreed that each juror should set down a figure representing the punishment which each believed the defendant should receive and the total of such figures was to be divided by twelve and such result would represent an average of opinion as to the punishment to be given the defendant. This was done, and it was determined that the average figure for punishment was nine years. The affidavit then goes on: " * * * and, that by ballot duly taken each juror accepted the amount so determined as her verdict, as did the other jurors, and that such result was adopted by the jury as their verdict in this case as shown above, and the Defendant's punishment fixed for the term of nine (9) years in the State Penitentiary."

The state filed counter-affidavits, that of one of the jurors containing this statement: "That during the deliberations of the jury, the guilt of the defendant was first determined after discussion and on the second ballot; that thereafter the jury determined that sentence should be set by the jury; that in endeavoring to arrive at the amount of sentence, and after considerable discussion during which the individual jurors expressed many varied opinions as to the punishment to be set by the jury, it was then proposed that each juror submit their proposed amount of punishment and that these amounts be

totaled and divided by twelve (12) to ascertain what the average of the various opinions would be; that the average referred to above was merely to be used for information purposes in further discussion had by the jury in endeavoring to set the said penalty; that the said average opinion was not taken and arrived at under an agreement to bind the members of the jury to accept the same as their own individual verdict and in fact said average was not the amount finally set in the verdict rendered in said cause; that subsequent thereto, and after considerable discussion and balloting, the punishment was fixed at the term of nine (9) years in the State Prison of Montana, which said exact term of punishment was not arrived at by averaging opinions as set forth above and in fact was and constituted a fair expression of opinion of all the jurors.''

Another counter-affidavit filed by the state was that of the foreman of the jury, which contains this statement: ''That during the deliberations of the jury, the guilt of the defendant was first determined after discussion and on the second ballot; that thereafter the jury determined that sentence should be set by the jury; that in endeavoring to arrive at the amount of sentence, and after considerable discussion during which the individual jurors expressed many varied opinions as to the punishment to be set by the jury, it was then proposed that each juror submit their proposed amount of punishment and that these amounts be totaled and divided by twelve (12) to ascertain what the average of the various opinions would be; that the average referred to above was merely to be used for information purposes in further discussion had by the jury in endeavoring to set the said penalty; that the said average opinion was not taken and arrived at under an agreement to bind the members of the jury to accept the same as their own individual verdict and in fact said average was not the amount finally set in the verdict rendered in said case; that subsequent thereto, and after considerable discussion and balloting, the punishment was fixed at the term of nine (9) years in the State Prison of Montana, which said exact term of punish-

ment was not arrived at by averaging opinions as set forth above and in fact was and constituted a fair expression of opinion of all the jurors."

From a fair reading and interpretation of the affidavit filed by the defendant it would appear that after the figure had been determined as contended there was further balloting, in that the affidavit states: "That by ballot duly taken each juror accepted the amount so determined." And this is supported by the two counter affidavits from the other jurors.

The defendant contends that since this court in several actions interpreting the provisions of section 93-5603(2), R.C.M. 1947, has stated: "It is only when the jurors agree in advance that the quotient thus obtained shall constitute the amount of their verdict, and such agreement is carried into effect, that the proceeding constitutes a resort to the determination of chance and is condemned by the statute above." Great Northern Ry. Co. v. Benjamin, 51 Mont. 167, 172, 149 Pac. 968, 969, and cases cited therein. Therefore the defendant further contends that the affidavit discloses there was no further consideration by the jury and they became bound by the quotient so determined; that by reaching such number "without further consideration" the verdict was decided by lot.

This contention cannot be sustained from the very wording of the affidavit filed by the defendant, and such is denied by the statements contained in the counter-affidavits.

It must be remembered that the statutes differ as between a civil action covered by section 93-5603(2), R.C.M. 1947, and the criminal statute hereinbefore referred to.

The defendant contends that a quotient verdict is a lot verdict as referred to in the criminal statute. While this point has never been decided by this court it has been before the courts of other states. Both Arkansas and Kentucky have criminal statutes identical to our section 94-7603 (4), R.C.M. 1947. In Speer v. State, 130 Ark. 457, 464, 198 S.W. 113, 115, the court said: "Lastly, it is urged that the verdict of the jury was determined by lot. The quotient verdict is not the result

of a lottery. It is a certain result, ascertained by adding 12 separate amounts together and dividing the sum total by 12. Only one result can be reached. It would be a lottery if 12 different amounts were placed on separate slips of paper and one slip then drawn out, which by agreement should become the verdict." Reaffirmed in Coca-Cola Bottling Co. v. Davidson, 193 Ark. 825, 828, 102 S.W. (2d) 833, 834, civil action, where the court stated: "That a quotient verdict was not one by lot." To the same effect in Kentucky, see Clark v. Commonwealth, 201 Ky. 620, 257 S.W. 1035, 1037.

In State v. Beesskove, 34 Mont. 41, 85 Pac. 376, this court stated that impeachment of their own verdict by jurors should not be tolerated any further than the statute permits, which would limit the matter to cases where the verdict has been decided by lot, or by any means other than a fair expression on the part of all the jurors.

Attention is called to the fact that from the counter-affidavits filed herein it is clear that the guilt of the defendant was first established by the jury, secondly the jury next determined whether or not it would fix the sentence and upon that point agreement was reached that the jury would so fix the sentence. The contentions of the defendant come only with regard to the amount of the sentence, and had nothing whatever to do with the guilt of the defendant upon which the jury were unanimously in agreement. There is nothing contained in the affidavit of the juror filed by the defendant which challenges the accuracy of these statements.

In view of what we have heretofore said we find no error in the denial of motion for a new trial.

The fifth specification contends the court was in error in denying defendant's motion for a mistrial made at the conclusion of the defendant's case in chief. This motion is a general summary of the contentions made by the defendant during the trial with respect to the conduct of the court in sustaining objections to questions and offers of proof and nothing is con-

tained in the specification that is not covered by what we have heretofore said. There was no error in denying the motion.

Defendant's specifications of error have been carefully considered and we find no prejudicial error committed by the district court. Accordingly the order denying a new trial and the judgment of conviction are affirmed.

MR. JUSTICES CASTLES and ANGSTMAN, concur.

MR. JUSTICE ADAIR:

I dissent. I also reserve the right to file a written dissenting opinion herein.