STATE, Respondent, *v.* POPA, Appellant.

(No. 4,263.)

(Submitted December 10, 1919. Decided December 17, 1919.)

[185 Pac. 1114.]

*Criminal Law—Murder—Evidence—General Reputation of De- fendant—Inadmissibility—Trial Practice—Offer of Proof— Appeal from Judgment—Evidence—Extent of Review.*

Appeal from Judgment—Extent of Review of Evidence.
    1. On appeal from a judgment, the supreme court is limited, in its review of the evidence, to an examination of the record to deter- mine whether there is any substantial evidence to justify the ver- dict.
Murder—Witnesses—Credibility—Weight of Evidence—Review on Ap- peal.
    2. The credibility of the state's chief witness, a boy thirteen years of age, at the trial of the slayer of the father of the boy, and the weight to be given to his testimony, were matters for determination by the jury, for whose judgment the supreme court on appeal may not substitute its own, in the absence of such inherent weakness in his testimony as would destroy it as legal evidence.
Trial Practice—Offer of Proof—When Necessary.
    3. Where an objection to evidence is sustained and the answer of the witness is not apparent, an offer of proof is necessary to enable the supreme court to review the trial court's ruling.
Criminal Law—General Reputation—Evidence—Specific Acts—Inadmis- sibility—Exception to Rule.
    4. Evidence in support or impeachment of the character of one accused of crime must, as a rule, be confined to general reputation, and cannot be extended to particular acts; where defendant, how- ever, calls a witness to support his general reputation, he may on cross-examination be asked concerning rumors of specific acts which reflect adversely upon defendant, to determine whether he knows his general reputation and, if so, to test his truthfulness.
Murder — General Reputation of Defendant — When Evidence Inadmis- sible.
    5. Under the rule that evidence of general reputation must be confined to the particular trait of character impugned in the alleged commission of the crime under investigation, evidence of the general reputation for honesty and integrity of one charged with homicide was irrelevant, and properly excluded where no attempt had been made to impeach him.

*Appeal from District Court of Valley County; John Hurly, Judge.*

George Popa was convicted of murder in the second degree and appeals from the judgment of conviction. Affirmed.

*Mr. Henry C. Smith,* for Appellant, submitted a brief and argued the cause orally.

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On May 28, 1917, George Kozocar was shot and instantly killed while at his home in Valley county. The defendant was accused of having murdered him, was tried and convicted of murder in the second degree, and has appealed from the judgment. The brief of his counsel is devoted to a discussion of the sufficiency of the evidence and certain rulings of the trial court admitting and excluding evidence.

The persons present at the time of the tragedy were all foreigners, presumably Roumanians, apparently of a very low order of intelligence. Most of them did not speak or understand the English language at all. Two or three of them were able to give their testimony without the aid of an interpreter, but they spoke and understood English so imperfectly that it is very difficult to comprehend the evidence. The state's case rests largely upon the testimony of Wessa Kozocar, the thirteen year old son of the deceased, and it is conceded by the eminent counsel for defendant that if this testimony is worthy of belief, it cannot then be said that the evidence is insufficient to sustain the verdict and judgment.

Briefly, the story told by the boy is to this effect: Some ten days or two weeks before May 28, Jake Moreaitu and his wife came from Canada looking for a location upon public land. They stopped at the Kozocar place during the interval under some sort of arrangement for compensating Kozocar for the accommodation furnished. About May 25 they began preparation to leave, and employed Popa and Alex. Boulder to assist in moving their property. On the evening of May 27, Popa

and Boulder came to the Kozocar place and remained over-night. On the morning following, Kozocar and Moreaitu and his wife engaged in a quarrel over the amount to be paid Kozo-car in settlement, and Moreaitu and his wife left without ad-justing the difference. When Popa and Boulder prepared to leave with their team and wagon, Kozocar stepped in front of the horses and, with a monkey-wrench in his hand, forbade them to go until Moreaitu should return and make settlement. Popa then went into the Kozocar house, procured a shotgun, returned to within a few feet of Kozocar and shot him in the face, causing his death. This story is corroborated in some particulars by the wife of the deceased, who, however, testified that she was not in a position to observe all that transpired. Except in one important particular, it does not differ from the story told by Popa and Boulder. Their version is that, when Kozocar stepped in front of the team, he struck one of Popa's horses in the head with the wrench; that Popa pro-tested and gave Kozocar a shove to one side; that thereupon Wessa went into the house and procured the gun, returned and pointed it at Popa, who seized it to prevent harm to himself, and that while the two thus held the gun, it was accidentally discharged, killing Kozocar. Wessa and his mother both testi-fied to violent language employed by Popa to Mrs. Kozocar when she upbraided him for shooting her husband. Popa and Boulder admit that after the shooting they drove away and did not offer to render any assistance—did not even examine the body of Kozocar to ascertain whether he was dead.

1. On appeal from a judgment, the review of the evidence by [1] this court is limited to an examination of the record to determine whether there is any substantial evidence to justify the verdict. (*Buhler* v. *Loftus,* 53 Mont. 546, 562, 165 Pac. 601; *Dawes* v. *City of Great Falls,* 31 Mont. 9, 15, 77 Pac. 309.) While the story told by the boy, when reduced to cold print, appears to contain many contradictions and inconsis-tencies, we do not feel disposed to say that it is so far in-herently improbable, or so far contradictory and inconsistent in itself as to render it unworthy of credence.

The jury had the advantage of seeing the boy on the witness-
[2] stand, observing his demeanor, his apparent candor or
lack of it, and his ability to comprehend the questions directed
to him by counsel, and they may have been able to explain
satisfactorily to themselves all inconsistencies and apparent
contradictions in his story, upon the theory of his limited
knowledge of the English language, and this they must have
done and, at the same time, credited the story in all its essen-
tial particulars. The credibility of the witness and the weight
to be given to his testimony were matters for determination
by the jury, and, in the absence of such inherent weakness in
the testimony as would destroy it as legal evidence, we may not
substitute our judgment upon it for theirs.

2. Certain assignments of error are predicated upon rulings
sustaining objections to questions asked witnesses for defendant,
but in every instance counsel failed to make an offer of proof.
[3] The general rule repeatedly announced by this court is
controlling here: "Where an objection to evidence is sustained
and the answer of the witness is not apparent, an offer of
proof is necessary to enable the supreme court to review the
ruling." (*Trogdon* v. *Hanson Sheep Co.*, 49 Mont. 1, 4, 139
Pac. 792, 793.)

3. Daniel Black, a witness called by the defendant, testified
[4] to his general reputation as a peaceable, law-abiding
citizen. On cross-examination he was asked if he had not
heard that defendant had undertaken, with a gun, to drive a
neighbor from his claim, and, over objections, he answered in
the affirmative. It is insisted that the court erred in over-
ruling the objection. Evidence given either in support or im-
peachment of the character of one accused of crime must, as
a rule, be confined to general reputation and cannot be ex-
tended to particular acts. (*State* v. *Shadwell*, 22 Mont. 559,
57 Pac. 281.) But whenever a defendant calls a witness to
support his general reputation, he subjects him to all legiti-
mate cross-examination and himself to whatever consequences
may result therefrom. The purpose of cross-examining the
witness concerning rumors of specific acts which reflect ad-

versely upon the accused is to determine whether the witness in fact knows the general reputation, and, if so, whether he is testifying truthfully in regard to it.

The court did not err in permitting the question to be answered. The county attorney was well within the limits of appropriate cross-examination. (*State* v. *Crow*, 107 Mo. 341, 346, 17 S. W. 745.) The subject was recently considered by this court in *State* v. *Jones*, 48 Mont. 505, 139 Pac. 441, where the rules and the limitations upon them will be found stated at length.

4. A witness, Theony, called by defendant, was asked if [5] he knew the defendant's general reputation for honesty and integrity, but, upon objection, was not permitted to answer. It is the rule that evidence of general reputation is to be confined to the particular trait of character impugned in the alleged commission of the crime under investigation. (1 Greenleaf on Evidence, Lewis' ed., sec. 55; 3 Greenleaf on Evidence, Lewis' ed., sec. 25; 1 Best on Evidence, sec. 259; 4 Chamberlayne on Evidence, sec. 3288; 1 Wharton on Criminal Evidence, sec. 59; 1 Wigmore on Evidence, sec. 59.)

In the trial of one accused of murder where, as in this instance, no attempt is made to impeach him, evidence of his general reputation for honesty and integrity is altogether irrelevant. (*People* v. *Cowgill*, 93 Cal. 596, 29 Pac. 228; *People* v. *Fair*, 43 Cal. 137; *Kee* v. *State*, 28 Ark. 155; *State* v. *Bloom*, 68 Ind. 54, 34 Am. Rep. 247; *State* v. *Schuman*, 89 Wash. 9, Ann. Cas. 1918A, 633, 153 Pac. 1084.)

The other assignments do not merit special consideration. We have examined all of them but do not find that any reversible error was committed.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES MATTHEWS and COOPER concur.

MR. JUSTICE HURLY, being disqualified, did not hear the argument and takes no part in the foregoing decision.