STATE, RESPONDENT, *v.* ROBINSON, APPELLANT.

(No. 7,957.)

(Submitted September 29, 1939.   Decided November 24, 1939.)

[96 Pac. (2d) 265.]

*Mr. C. D. Borton* and *Mr. George W. Farr*, for Appellant, submitted a brief and argued the cause orally.

*Mr. Harrison J. Freebourn*, Attorney General, *Mr. Carl N. Thompson*, Assistant Attorney General, and *Mr. Thomas R. Marron*, County Attorney of Valley County, for the State, submitted a brief; *Mr. Marron* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

Defendant was convicted of the crime of manslaughter and sentenced to five years in the state penitentiary. This appeal is from the judgment of conviction and from the order denying his motion for a new trial.

The charging part of the information set forth that "Claude Robinson is accused by the County Attorney of Valley County, Montana, by this information of the crime of manslaughter committed as follows: That at the County of Valley, in the State of Montana, on or about the 22nd day of October, 1937, and before the filing of this information, the said Claude Robinson then and there being, did then and there wilfully, wrongfully, unlawfully, knowingly and feloniously kill one Ralph Nelson, a human being, all of which is contrary to the form," etc.: Three men were walking along the side of the highway on their way to the Great Northern roundhouse where they were employed, and were run down by the defendant; one was killed and another seriously injured.

The facts as they appear from the testimony are substantially as follows: About 8:30 or 9 o'clock P. M., on the day charged in the information, defendant, a bartender in the employ of Jerry Huston and Barney Arnekley, at the request of the latter

drove to Wheeler, a town located some 20 miles out of Glasgow on the Glasgow-Fort Peck highway. In addition to Arnekley, defendant took along a girl friend and one Louis Pecora, who appears to have been a mutual friend of the defendant and Arnekley. The defendant drove the car at all times on the trip.

Defendant admits that he had a drink of whiskey before leaving Glasgow, at the Club Beer Hall, where he got in contact with Arnekley and Pecora; the party stopped at the Los Angeles Club on the way to Wheeler, where they danced, and defendant had two more drinks of whiskey. On arriving at Wheeler the party visited the "Casino" where three of the party played cards, but all testified that no drinks were taken. Arnekley was left at Wheeler and the three started on the return trip to Glasgow, but again stopped at the Los Angeles Club, where defendant had the fourth glass of whiskey. About 11:30 P. M. the three left the Club for Glasgow, all riding in the front seat. Defendant admits he drank four whiskies during the evening, but said he was not intoxicated. Witnesses who saw the defendant at Wheeler testified that he was noticeably intoxicated and boisterous. The policemen to whom defendant reported the accident testified that his talk and manner indicated intoxication, and further testified that he admitted he was intoxicated when being held at the police station.

The Great Northern line runs east and west through Glasgow. The highway from Wheeler into Glasgow runs in a northwesterly direction as it approaches the Great Northern Railway line, and when it reaches the railway right of way it turns west and runs into Glasgow parellel with the railway. The evidence clearly establishes the fact that at the turn in the highway mentioned defendant was driving 50 miles or more per hour. He admits he was driving 35 or 40 miles; Pecora testified to 40 or 50 miles, and one witness who drove a truck from Wheeler to Glasgow just ahead of the car driven by the defendant, testified that he drove the truck at around 60 miles per hour, being in a hurry to reach town, and that defendant's car kept close to him all the way. Other evidence was received to the

effect that defendant was driving at a high rate of speed, and in a more or less reckless manner. As they came near the railway line and defendant attempted to make the turn towards Glasgow, it is obvious that the car was out of control.

It is shown by the testimony of a highway patrolman, a Glasgow policeman and a third witness who assisted the patrolman and the policeman in making the measurements, that the car was off the oiled portion of the highway, running partially on the shoulder and partially in the ditch at the side of the highway for 87 feet before it reached the scene of the accident; that at or near the scene of the accident the car returned to the oil but again went off the oil after the impact with the body of the man killed, continued off the oil wholly or partially 108 feet after the impact, and the body of the man killed was 163½ feet from the point where he was struck, obviously being dragged there by the defendant's car.

The defendant did not stop, but testified that he knew he had hit at least one of the three men. His excuse for not stopping was that he desired to protect the girl from notoriety, and further that he desired, as he expressed it, time in which to pull himself together. The car was driven on through town and over to the north side where the girl was left at her place of residence, and then defendant and Pecora drove around for a short time, examined the car and then went to the police station and reported the accident. The policeman on duty at the office called another who placed the defendant and Pecora under arrest, and one of the policemen then went with Pecora to the scene of the accident, where it developed that one of the men hit was dead and another seriously but not fatally injured.

Error is assigned in eighteen particulars, twelve of which relate to instructions given or refused. The others pertain to the court's action with respect to: (1) Defendant's request for a bill of particulars; (2) defendant's motion to require the state to elect the kind of manslaughter upon which it was seeking a conviction; (3) impeachment of two of the state's own witnesses; (4) remarks of the court and county attorney; (5) tes-

timony of one of the state's witnesses respecting the speed of defendant's car; and (6) sufficiency of the evidence. The assignments will be considered in the order mentioned.

(1) Defendant moved the trial court for an order requiring ██ the state to furnish a bill of particulars. This motion was denied. The same question was before this court in the case of *State* v. *Gondeiro*, 82 Mont. 530, 268 Pac. 507, 511. In that case this court, after reviewing at great length the history of pleading in criminal cases, arrived at the conclusion that the furnishing of a bill of particulars is within the sound judicial discretion of the trial court, and therein said: "When it is apparent to the court that the defendant, by reason of the general character of the charge, may have difficulty in preparing his defense, we think the trial judge should incline toward granting a motion for a bill of particulars; we commend the practice." And therein this court quoted with approval what was said by the supreme court of Florida in the case of *Mathis* v. *State*, 45 Fla. 46, 34 So. 287: "The matter rests 'within the sound judicial discretion of the court, depending entirely upon the nature and circumstances of each particular case as they appear to the court before whom the trial is had, and the refusal of the trial judge to grant said motion will not be disturbed or reversed by an appellate court, unless there was an abuse of such discretion.'"

The record here discloses that the defendant knew he was charged with killing the deceased by striking the latter with an automobile which the defendant was driving. The minutes of the trial court disclose that the defendant was arraigned upon this charge on November 24, 1937, and then entered a plea of not guilty; that the cause came on for trial on September 19, 1938, and that upon the last-named date the motion for a bill of particulars was first called to the attention of the trial court. The record further discloses that an inquest was held into the cause of the death of Ralph Nelson. The presumption is that the officers charged with the performance of that duty complied with the law (sec. 12386, Rev. Codes 1935), and that a transcript of the testimony taken at the

328

coroner's inquest was filed in the office of the clerk of the district court, and that such testimony was accessible to counsel for the defendant, and such testimony would advise the defendant of the nature of the offense as fully as any bill of particulars.

All of the circumstances considered, we think the conclusion is inescapable that the trial court did not abuse its discretion in denying the motion for a bill of particulars.

(2) At the close of the state's case, counsel for the defendant ▮ moved the court to require the state to elect as to the kind of an alleged manslaughter upon which it was seeking a conviction—whether voluntary or involuntary, and, if the latter, whether it was committed in the doing of an unlawful act, or in the doing of a lawful act in an unlawful manner or without due caution or circumspection. The motion was denied.

Manslaughter was the only crime charged in the information. What we have said as to the bill of particulars is pertinent on this assignment. But we will add that the proof submitted at the trial determined the nature of the crime committed. Such proof was sufficient to prove the crime of involuntary manslaughter, but insufficient to prove the crime of voluntary manslaughter; hence the evidence produced furnished the defendant with the identical information which he was seeking by the motion to elect. In other words, the state had already shown that it was prosecuting the defendant for involuntary manslaughter because of the character of the evidence offered. Defendant at no time had any reasonable ground to assume that his defense would have to be other than for involuntary manslaughter. The court properly denied the motion to elect.

(3) Error is predicated on the court's permitting the state ▮ to ask impeaching questions of two of its own witnesses over the objection that no proper foundation had been laid for such impeachment. In each instance the answers given by the witness were contrary to those formerly given by him at the coroner's inquest. A sufficient showing of surprise was made to the court as to the unwillingness of the witnesses and as to their hostile change of front on important questions to

move the court's discretion. We are of the opinion that the impeachment was properly allowed. (Sec. 10669, Rev. Codes; *State* v. *Kinghorn*, ante, p. 22, 93 Pac. (2d) 264.)

(4) Complaint is made that the rights of the defendant were ■ prejudiced by the action of the court and the county attorney in connection with the examination of the witness, Perry. Considered in the light of the explanation made by the court at the time and of the instructions given to the jury, we are of the opinion that the rights of the defendant were not thereby prejudiced.

(5) Assignment No. 17 is predicated upon the court's per-■ mitting Peter Gaasch to testify over objections as to the rate of speed of the automobile, which Gaasch assumed to determine by the sound of the tires on the highway. This, of course, was opinion evidence. Was not the witness in a position to express an opinion? Circumstances surrounding him at that time indicate that that opinion had but little, if any, value. But in our judgment he had a right to express the opinion, and the court to permit it; it could not have had much weight, and even if we should consider Gaasch's testimony incompetent, there was abundant testimony given by a number of other witnesses showing beyond question that at the time of the accident the defendant was driving his car at an excessive rate of speed within the corporate bounds of the city of Glasgow.

(6) Insufficiency of the evidence to justify the verdict. This ■ court on appeal in a criminal case is controlled by the following rules: Disputed questions of fact and the credibility of witnesses will not be considered on appeal. Determination of such matters is within the province of the jury. (*State* v. *Howell*, 26 Mont. 3, 66 Pac. 291.) It is the province of the jury to find not only on the question of the accused's guilt generally, but to fix the degree of guilt, and so long as there is substantial evidence to support the verdict, it cannot be disturbed on appeal. (*State* v. *Leakey*, 44 Mont. 354, 120 Pac. 234; *State* v. *Popa*, 56 Mont. 587, 185 Pac. 1114; *State* v. *Riggs*, 61 Mont. 25, 201 Pac. 272; *State* v. *Brantingham*, 66 Mont. 1,

212 Pac. 499; *State* v. *Harkins,* 85 Mont. 585, 281 Pac. 551; *State* v. *Dougherty,* 71 Mont. 265, 229 Pac. 735.)

It is also the province of the jury to judge of the credibility of witnesses, and a jury verdict will not be disturbed unless flagrantly contrary to the evidence. (*State* v. *Popa,* supra; *State* v. *Prouty,* 60 Mont. 310, 199 Pac. 281; *State* v. *Broell,* 87 Mont. 284, 286 Pac. 1108.)

The defendant in the case at bar was represented at the trial and on appeal by able counsel, and this court is concluded by the foregoing rules as to credibility of witnesses and weight of evidence; and furthermore, there is no reasonable ground, in our opinion, to presume that the defendant did not have a fair trial, or that the verdict of the jury was not in accord with the evidence.

A discussion of each of the instructions given over defendant's objection, and of each of the defendant's instructions refused, would unduly extend this opinion. Suffice it to say that an analysis of all of the instructions given shows that the jury was fully and fairly instructed as to the law applicable to this case, and that the instructions refused were either covered by those given, or were inapplicable, or contained statements not warranted by either the facts or the law.

The judgment and order denying a new trial are affirmed.

MR. CHIEF JUSTICE JOHNSON, ASSOCIATE JUSTICES ANGSTMAN and ERICKSON, and HONORABLE FRANK P. LEIPER, District Judge, sitting by consent of parties, concur.