STATE OF MONTANA, PLAINTIFF AND RESPONDENT, v. MARVIN COCKRELL, DEFENDANT AND APPELLANT.

No. 9709.
Submitted March 11, 1957.   Decided March 22, 1957.
As Amended March 28, 1957.   Rehearing Denied April 12, 1957.
309 Pac. (2d) 316.

Messrs Wuerthner & Wuerthner, Great Falls, for appellant.

Mr. Arnold H. Olsen, former Atty. Gen., Mr. Forrest H. Anderson, Atty. Gen., William F. Crowley, Robert J. Emmons, Asst. Attys. Gen., Gene A. Picotte, Sp. Pros., Helena, for respondent.

Mr. Julius J. Wuerthner, Mr. John P. Wuerthner, and Mr. Crowley argued orally.

MR. JUSTICE ANGSTMAN:

Defendant was convicted of second degree assault and was sentenced to serve two years in the state penitentiary. A motion for a new trial was denied, and he has appealed from the judgment and from the order denying the motion.

At the time of the alleged offense, defendant was a resident of Galata, Toole County. He was then manager of the Gallatin Valley Milling Company and his wife conducted a small grocery store. Defendant's home was maintained in the back part of the grocery store where he lived with his wife and four children. The alleged assault was committed upon Roy Edmister.

The record shows that Edmister was also a resident of Galata, Toole County. Edmister operated a lumberyard and hardware store in Galata.

On the morning of the alleged offense, Edmister stopped at the store and bought some cigarettes from defendant's wife. According to her testimony he made some snide remarks to her which she reported to the defendant. Defendant, upon learning of this conduct on the part of Edmister, went to his lumberyard and hardware store and protested to Mr. Edmister about the remarks. Edmister denied making any improper remarks, but defendant invited him to the store where he could explain to defendant's wife what he meant by such remarks. He then accompanied defendant to the store.

The evidence is in sharp conflict as to just what he did and just what ensued when Edmister and defendant arrived near the back door of the store where defendant's wife then met them, but it is agreed that the defendant and Edmister got into a tussle and as a result thereof Edmister was injured.

The evidence shows that defendant swung at Edmister but missed him. As he did so Edmister made a dive and put his head between defendant's legs, with his arms around defendant's legs, and while in that position defendant "flipped" him upside down. Edmister testified, however, that while he was in that position and before he was "flipped," defendant struck him on the back. Edmister testified: "Q. What did he hit you with? A. I couldn't see. Q. How did you know he hit you? A. Because he hit me. I was struck and he was the only one who could have done it."

On cross-examination he testified: "Q. Isn't it a fact that you are not certain whether Marvin Cockrell struck you or assaulted you, or whether his wife, Lillian Cockrell, assaulted you? A. No sir, Marvin Cockrell did it. Q. You are certain about that? A. Yes."

Edmister has been paralyzed from the shoulders down ever since the encounter.

Defendant produced evidence from which he contends the injuries sustained by Edmister were purely accidental and that there was, in fact, no assault on his part with intent to inflict injuries upon Edmister.

As before noted, the evidence shows that defendant swung at Mr. Edmister but missed him and as he did so Edmister ducked toward him and put his head between defendant's legs and it was shown that Edmister had defendant backed up against a fence. It was at this time Edmister stated defendant struck him on the back. Edmister's deposition was taken and it appears that he then made statements from which the conclusion could be drawn that he did not know who struck him on the back; that it might have been Mrs. Cockrell. That conflict presented a question for the jury. Lake v. Webber, 120 Mont. 534, 188 Pac. (2d) 416; McCollum v. O'Neill, 128 Mont. 584, 281 Pac. (2d) 493.

While as above indicated, there was evidence tending to show that the injuries sustained by Edmister were the result of an accident, as contended for by defendant's counsel, yet we note

there is a conflict in the evidence and the jury was warranted in finding that defendant actually assaulted and struck Edmister. There was evidence that Edmister made statements to others that "It isn't Marvin's [meaning defendant's] fault." Edmister denied making such statements to anyone except to defendant's mother.

He gave as his reason for the statement to her, "Well, she was very upset about it and her health isn't too well—I know about that—and she was getting quite worse, as I understand it, as time went on, and I didn't want her to feel badly about it."

There was likewise testimony that the fence had been removed before the alleged assault and that therefore Edmister's testimony should be disregarded in its entirety. We do not agree with this contention. Even though he was mistaken about the fence (and as to it the evidence was conflicting) his entire evidence should not be rejected.

The evidence is uncontradicted that after the encounter, defendant carried Edmister into defendant's house; placed him on a couch and helped him so far as he could. This circumstance along with all the other attendant circumstances would indicate that there was no malice on the part of defendant after the alleged assault but does not refute the charge that there had been an assault. The evidence may be such as to appeal to the board of pardons but we cannot say that there is lacking substantial evidence to sustain the verdict and judgment.

Defendant's contention that the verdict and judgment rest upon surmise, speculation and conjecture cannot be sustained.

In State v. Popa, 56 Mont. 587, 589, 590, 185 Pac. 1114, 1115, this court said:

"* * * While the story told by the boy, when reduced to cold print, appears to contain many contradictions and inconsistencies, we do not feel disposed to say that it is so far inherently improbable, or so far contradictory and inconsistent in itself as to render it unworthy of credence. * * * The credibility of the witness and the weight to be given to his

testimony were matters for determination by the jury, and, in the absence of such inherent weakness in the testimony as would destroy it as legal evidence, we may not substitute our judgment upon it for theirs.''

To the same effect are: State v. Woolsey, 80 Mont. 141, 259 Pac. 826; State v. Robinson, 109 Mont. 322, 96 Pac. (2d) 265; and State v. Madden, 128 Mont. 408, 276 Pac. (2d) 974.

The court did not err in submitting the case to the jury or in denying defendant's motion for a new trial for insufficiency of the evidence to sustain the verdict.

The next question raised by the defendant is that it was error on the part of the court to deny defendant's motion questioning the right of Mr. Picotte to appear as a special prosecutor. The record in this respect is as follows: When the case was called for trial, before the jury was selected, defendant's counsel made this statement:

''We call the Court's attention to section 94-7239, R.C.M. 1947, and we make a motion that unless dire necessity prevails or that the County Attorney is disqualified or is sick or not able to appear here, that without an order of the Court or without an order of the County Commissioners—and we have a letter here that will prove that—that this outside lawyer is not permitted to sit in this case.''

The court stated: ''I don't care to hear any argument or authorities, the motion is denied.''

R.C.M. 1947, section 16-1126, provides in part:

''The board of county commissioners has the power, except in counties of the first class, whenever, in its judgment, the ends of justice or the interests of the county require it, to employ, or authorize the county attorney to employ, special counsel to assist in the prosecution of any criminal case pending in such county, * * *''.

The record does not show whether any appointment was made under the authority of this statute. However the general rule is, that on a collateral attack such as this, the court will indulge the presumption that the appointment was regularly

made in the absence of a showing to the contrary. Davis v. People, 77 Colo. 546, 238 Pac. 25, and Blair v. State, 72 Neb. 501, 101 N.W. 17. Likewise without any order of the board of county commissioners, the county attorney may appoint as many deputies as necessary for the faithful and prompt discharge of the duties of his office, providing that no compensation or salary may be allowed therefor. R.C.M. 1947, section 16-2409. See State v. Crouch, 70 Mont. 551, 227 Pac. 818, where this court sustained the right of the county attorney to appoint a deputy to act without pay.

In State v. Whitworth, 26 Mont. 107, 66 Pac. 748, 750, it was held that the trial judge may appoint a special prosecutor. However, in the opinion it is pointed out that "it does not appear that any one of the three attorneys appearing for the state had received or been promised any compensation by any one whomsoever, except possibly such compensation as may be inferred as promised because of the employment of Mr. Waterman by the chairman of the board of county commissioners of Meagher County." Again the court said: "We do not find anything in the record to show that either of the two assistant counsel appointed by the court was employed in the interest of any private person."

The record in this case shows that Edmister had a civil action ▮ pending against the defendant to recover damages for the injuries sustained as a result of the alleged assault. One of the attorneys for the plaintiff in that action is Mr. Picotte, who is the special prosecutor here. However, the defendant did not after submitting proof in the record of the pendency of this civil action, make any motion that Mr. Picotte be not permitted to further prosecute this action. In other words, the record does not indicate that defendant objected to Mr. Picotte's appearing as special prosecutor in this case because of the fact that he was and is Edmister's attorney in the civil action. Hence, we cannot consider the point in this case as to whether the employment of Mr. Picotte by the prosecuting witness to recover damages in the civil action disqualified him from prosecuting

the defendant in the criminal proceeding within the rule suggested in the Whitworth case.

Likewise, the rule is that even though there was no order of appointment of the special prosecutor, the defendant is in no position to complain so long as he had a fair and impartial trial and so long as the special prosecutor is not guilty of conduct prejudicial to defendant. State v. O'Brien, 35 Mont. 482, 90 Pac. 514; State v. Biggs, 45 Mont. 400, 123 Pac. 410.

Defendant relies on the case of State ex rel. Porter v. District Court, 124 Mont. 249, 220 Pac. (2d) 1035. That case was one having to do with proceedings before a grand jury which proceedings are governed by special statute, R.C.M. 1947, section 94-6324, designed to promote secrecy in such proceedings. State ex rel. Nolan v. District Court, 22 Mont. 25, 55 Pac. 916. The case has no bearing on the question here considered.

The defendant stresses the fact that the record discloses Edmister had been adjudicated to be mentally incompetent on August 1, 1938; had been confined at the state hospital at Warm Springs, and had not been officially restored to capacity until about two years after the alleged assault. He contends that the court abused its discretion in permitting Edmister to testify in the case because of his mental condition.

R.C.M. 1947, section 93-701-3, provides that the following persons cannot be witnesses: "1. Those who are of unsound mind at the time of their production for examination."

The record disclosed that Edmister had been paroled from Warm Springs on November 19, 1938, and was judicially restored to capacity by order dated August 24, 1954, which was more than a year before the date of this trial.

Defendant contends that it was incumbent upon the district court to make some preliminary examination of the competency of the witness, after objection to his competency was made, before permitting him to testify. The court could take judicial notice of its own order restoring the witness to competency made more than one year before the trial. That order

had the effect of restoring the presumption of sanity. State v. Bucy, 104 Mont. 416, 66 Pac. (2d) 1049.

In order for defendant to prevail upon the point that Edmister was not a competent witness it was incumbent upon him to make a showing other than the adjudication of incompetency made in 1938 where as here an order had been made adjudicating him to be competent more than a year before the trial.

The record does not disclose that Edmister was of such unsound mind at the time he was testifying as to place the district court in error in permitting him to testify regarding the alleged assault.

The next objection of the defendant is that the court erred in permitting the jury to examine the back of Edmister. The rule is that wounds received or scars left in the commission of a crime are admissible if they tend to solve some controverted issue. 22 C.J.S., Criminal Law, section 716, page 1225. The objection to exhibiting the back was the fact that the assault had occurred some three and one-half years prior to the time of the trial. It was contended by defendant that there was no evidence to show that the back was in the same condition at the time of the trial as at the time of the alleged assault. This objection goes to the weight of the evidence, rather than to its admissibility. It is true that the condition of the back may have been different three and one-half years after the alleged assault from what it was at the time of the assault. That question was one that the jury could properly weigh and we are not able to say that any substantial right of defendant was prejudiced by reason of the admission of this evidence.

It should be pointed out that the record does not show that there was anything about the back of Edmister that was calculated to excite sympathy or prejudice on the part of the jury. We are in no position to determine what the jury saw. So far as we can tell there may have been nothing visible aside from that of a normal back.

The trial judge was in a position to see the condition of the

back and we cannot say from the cold record that the jury saw anything that was calculated to inflame their minds.

Defendant contends the court erred in allowing more than six witnesses to be examined on the part of the prosecution. He relies on R.C.M. 1947, section 94-8904, which reads:

"In criminal actions in a court of record, the clerk of the court must not issue a subpoena on behalf of the state or defendant for more than six witnesses, except upon the order of the court or judge, and such order may be made upon proper showing by affidavit or otherwise."

Defendant objected to more than six witnesses being called upon the ground that the court or judge had made no order allowing them. The court did not commit error in allowing more than six witnesses to testify for the state. This statute is to control the expenses of the county and is a limitation upon the clerk of the court and not upon the judge. If it appeared upon the trial that more than six witnesses were necessary for the state, the court could allow them to testify whether subpoenaed or not, pursuant to an express order of the court. Defendant was not prejudiced by the absence of an express order made by the court.

The only other question raised by defendant is that the court erred in not excluding from the courtroom all the witnesses on defendant's motion, but instead permitted two of them to remain in the courtroom. R.C.M. 1947, section 93-1901-2, provides:

"If either party requires it, the judge may exclude from the courtroom any witness of the adverse party, not at the time under examination, so that he may not hear the testimony of other witnesses."

Defendant contends that when the motion is granted it must be granted in its entirety and that no exception may be allowed. With this we do not agree. It is discretionary with the court to exempt some witnesses from the operation of the exclusion rule. State v. Walsh, 72 Mont. 110, 232 Pac. 194. That discretion was not abused here where the prosecuting

witness was paralyzed and where he needed the personal attention of his wife.

Finding no reversible error in the record the judgment and order are affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES BOTTOMLY and ADAIR, concur.

MR. JUSTICE CASTLES, dissents.