STATE OF MONTANA, Plaintiff and Respondent, *v.* LARRY CROWL and RICHARD SHANK, Defendants and Appellants.

No. 9927.
Submitted January 19, 1959. Decided April 6, 1959.
337 Pac. (2d) 367.

Leif Erickson, Helena, for defendant Crowl.

Patrick F. Hooks, Helena, for defendant Shank.

Leif Erickson and Patrick F. Hooks, Helena, argued orally for appellants.

Forrest H. Anderson, Atty. Gen., Gordon R. Bennett, Asst. Atty. Gen., John C. Harrison, County Atty., Helena, for respondent.

Gordon R. Bennett, Asst. Atty. Gen., argued orally for respondent.

THE HONORABLE PHILIP C. DUNCAN, District Judge (sitting in place of MR. CHIEF JUSTICE HARRISON).

Both defendants, each over the age of 16 years and under the age of 18 years, were convicted of the crime of assault in the first degree. The jury left the punishment to be fixed by the court and recommended suspended sentences. The court sentenced each defendant to the minimum punishment of five years in the state prison and suspended the same.

The general facts are that at about 10:30 p.m., October 13, 1957, a Sunday night, the defendants and other juveniles, variously estimated to total 9 to 15, in two cars, one belonging to defendant Crowl, went to the hobo jungles north of the Great Northern Railway Company tracks at the outskirts of Helena and there found the complaining witness, Foster, and another transient, Davis, lying around a fire. They were small elderly men. The evidence is clear and undenied that Foster was assaulted by one of the juveniles, other than the two defendants, and by threat or fear of assault the two transients were forced to participate in obscene and degrading sexual acts. The evidence is conflicting as to whether the boys, including defendants, were armed with pipes, hoses filled with sand or lead, sticks, or similar weapons, or entirely unarmed. The evidence is also conflicting as to whether the defendants aided and abetted in the assault, even to the extent of being leaders or principal actors, or were merely unwilling bystanders. In any event the entire story is unflattering to starry-eyed youth.

Over objection the state was permitted to introduce evidence showing another offense. One Dedmon, a ranch worker temporarily in Helena, testified that at some time between the hours of 1:00 and 2:00 o'clock in the morning of October 13, 1957, or about 21 or 22 hours prior to the assault on Foster and Davis, he, Dedmon, while on his way to his hotel was struck from behind on the main street of Helena, rendered unconscious and robbed. He came to his senses on a country road.

He was totally unable to identify his assailants. The testimony of Deputy Sheriff Larry Lytle was admitted to connect defendants with the assault on Dedmon. Lytle testified he met defendant Shank on the street and Shank told Lytle that he, Shank, and defendant Crowl had assaulted and beat some person other than Foster and Davis on October 13th. Lytle assumed Shank was referring to Dedmon, but the record on appeal is not clear as to whom Shank was referring. There was also additional testimony by deputy jailer Timothy Skinner in corroboration of Lytle.

From the admonition and instruction he gave the jury, it is apparent that the district judge who tried the case admitted this evidence of another offense for the only purpose for which it might be admissible, that is, as an aid in the determination of the requisite criminal intent, a dominant question in issue in view of the fact that it is an essential element of assault and also in view of defendants' testimony to the effect that their presence at the scene of the assault was due to coercion of bigger and stronger boys and that they looked on the whole affair with disfavor and even attempted to aid the transients, and which testimony was in contradiction to the evidence produced by the State indicating defendants not only aided and abetted but either led or were principal actors in the commission of the crime.

However, this court, after careful consideration, fails to see how the evidence of the alleged assault on Dedmon is admissible to negative defendants' contention of lack of intent in the Foster-Davis assault.

To paraphrase Dean Wigmore (Wigmore on Evidence, 3d Ed., Sec. 302), in evidencing criminal intent by other offenses, the process of thought is based upon the doctrine of chances, that is, an unusual element might be present in one instance, but the oftener similar instances occur with similar results, the less likely is the abnormal element apt to be the true explanation. If shot at once it may be an accident, but the oftener this occurs the more likely it is to be intentional. So, here, if

the defendants were present at but one "bum rumbling," to use the terminology employed at the trial, defendants' explanation of their presence might be accepted as true, but if the defendants were shown to be present at another "bum rumbling" the less likely would that explanation be accepted, and the oftener such instances occurred the more probable would be the presence of criminal intent.

Yet, to agan paraphrase Wigmore, supra, in order to satisfy this demand, it is necessary that the other acts be *similar*, and it is on this requirement of similarity that there is difficulty, as shown by the great variety of rulings of both this court and courts of other jurisdictions, and probably accounts for the difference of opinion between this court and the district court.

It seems to us that to show defendants' presence or participation in other assaults on dissimilar men at dissimilar places and for dissimilar purposes does not satisfy the requirement of similarity in evidencing intent by other offenses, either as such requirement is described by Wigmore or by this court in State v. Knox, 119 Mont. 449, 175 Pac. (2d) 774.

The Dedmon assault was in no way connected with nor related to the Foster-Davis assault. The assaults were over 20 hours apart and against men having no reference with each other. The Dedmon assault was committed on the main street of Helena, the other in the hobo jungles on the outskirts of the city. Dedmon was a visiting working man returning to his hotel. Foster and Davis were "bums" lying around a hobo's fire. The Dedmon assault was for robbery. The Foster-Davis assault was for the satisfaction of a desire to inflict sadistic or perverse cruelty and participate in obscene and perverted sexual excitement. If Dedmon had been treated the same as Foster and Davis, the attack on him might have great bearing, but he was not so treated. He was knocked out and robbed and perhaps savagely beaten or kicked, but not in the same fashion or for the same purpose.

It is conceded that the Dedmon assault shows a character ▮▮▮ disposed towards violence and at complete odds with defendants' claimed actions and mental attitude toward the two transients, but the law is that in criminal cases character may not be evidenced by particular bad acts or other offenses. State v. Popa, 56 Mont. 587, 185 Pac. 1114; State v. Shadwell, 22 Mont. 559, 57 Pac. 281; State v. Sauter, 125 Mont. 109, 232 Pac. (2d) 731; Wigmore on Evidence 3d Ed., secs. 193, 194 and 979; Jones on Evidence, 5th Ed., sec. 162.

In view of our conclusion that any evidence respecting the Dedmon assault was and is inadmissible and necessitates the remanding of this case for a new trial, it becomes unnecessary to discuss the question of whether or not the evidence respecting the Dedmon assault makes out a prima facie case or shows with reasonable certainty that the Dedmon assault was committed by the defendants so as to come within the rule announced in State v. Ebel, 92 Mont. 413, 15 Pac. (2d) 233. It is also unnecessary to discuss whether or not the admissions made by Shank to Lytle and Skinner were admissible against defendant Crowl.

As to the other contentions of defendants, we have carefully ▮▮▮ reviewed the record and find no merit in any of them, including the claimed insufficiency of the evidence to support the verdict; excepting, however, Instruction No. 29 reading as follows:

"You are instructed that should you find the defendants, or either of them, guilty and leave the punishment to be imposed by the Court, you may make any one of the following recommendations:

"1. Leniency.

"2. A suspended sentence.

"3. That they, or he, be placed somewhere other than in the Montana State Prison. In the event you make any of the foregoing recommendations, the Court will require a field representative of the Montana Pardon and Parole Board to make a pre-sentence investigation before imposing sentence

to the end that whatever sentence be imposed, be compatible with the public welfare and the best interests of the defendants, or either of them.

"4. If you find the defendants, or either of them Not Guilty, you may recommend that they, or he, be proceeded against in Juvenile Court."

In their argument defendants contend that this instruction was an invitation to convict, and that the effect on the jurors of the alternative offered in section 3 of the instruction would be to make them believe if defendants were convicted the court would not sentence them to the state prison.

These objections could be overcome by omitting the first sentence of section 3 of the instruction and by adding to the instruction a statement to the effect that the court is not bound to follow any of the suggested recommendations in the event the jury should make one of them part of its verdict. It is likewise the view of a majority of this court, although not that of the writer of this opinion, that section 4 of the instruction should be stricken. If these changes were made in the instruction, we can see no reason why it would not then be a perfectly proper and valid instruction to be given on a new trial, even a necessary one considering the strange and difficult problems raised by this type of a juvenile case.

The reason that the writer of this opinion believes section 4 of the instruction should be retained is that it is conceivable that while the jury might not find from the evidence that the defendants were guilty of first degree assault and hence subject to the criminal laws of the state, the jury might find that defendants were guilty of a lesser degree of assault and so should be proceeded against in juvenile court.

The judgment is reversed and the cause remanded to the lower court for a new trial.

MR. JUSTICES ANGSTMAN and CASTLES, concur.

MR. JUSTICE BOTTOMLY (concurring in result):

I agree that the cause should be remanded for new trial, but not with all that is said therein.

MR. JUSTICE ADAIR:

I concur in the reversal of the judgment and the remanding of the cause to the district court for a new trial but not in all that is said in JUDGE DUNCAN'S foregoing opinion.